F. H. AYERS v. A. J. HARRIS.

(Case No. 5545.)

1. SURVEY — CHARGE OF COURT.— If the footsteps of the surveyor who made a survey, the true locality of which is in issue, can be traced by the objects called for by him in his description, it is not important to determine which corner was first established by him on the ground.

2. SAME.— In seeking to ascertain the true locality of a survey which was actually made, controlling importance cannot be given to the corner first described as the beginning corner in the grant, especially in a case where the surveyor had testified that he really began the survey at a different corner, and ran the lines on the ground, reversing the courses described in the grant. In such a case it is not error to instruct the jury that if, by reversing the calls and tracing the lines in a different direction from that called for in the field-notes, they can more nearly harmonize all the calls of the grant, it is their duty to do so.

3. CASE DISTINGUISHED.— This case distinguished from Phillips v. Ayres, 45 Tex., 601.

4. SURVEY — CHARGE OF COURT.— When the court has carefully instructed a jury as to the comparative dignity and force of calls in the grant describing a survey, the locality of which is in dispute, it is not error to instruct them that, if they cannot identify any designated corner from the evidence, it is their province to fix the lines of the survey (in subordination to the general rules which the court has described) in such a way as will most nearly harmonize the calls with known corners and marked lines identified, before them by evidence.

5. SAME — CHARGE OF COURT.— When the river front of a survey was ascertained, and its upper and lower corners identified, see statement and opinion for facts which rendered it improper for the judge to charge the jury that, if they could not fix the locality of the back line with reasonable certainty, they should locate it so as that the survey would embrace the number of acres called for in the grant.

6. SAME — CALLS IN A GRANT IDENTIFYING LAND.— When two corners of a survey are found and identified, being the upper and lower corners of the survey bordering on a stream, it is error to charge the jury that they may locate the back line with reference to the area of land which the grant, if properly located, should contain, in disregard of the distances called for in describing the side lines, in the event they could not fix the disputed portions of the lines with reasonable certainty.

7. SURVEY — CALLS IN A GRANT.— A grant was located on a river, the upper and lower corners of which on the river were identified. The back or north line of the survey could not be identified by finding either the northwest corner, which was the second corner called for in the grant, or by certainly identifying the northeast corner by the objects called for; but a marked line was found on the proper course of the east line, prolonged beyond the disputed northeast corner. The first line called for in the grant was the west line running back from an established corner on the river. *Held*, that the jury should have been instructed that if they could not fix the northeast corner, nor the north or back line, by any marks or monuments, then they should fix it by courses and distances of the first and second lines of the survey, except that the second or back line should be extended so as to meet

the recognized east line as extended beyond the disputed northeast corner. Such a charge harmonizes with the rule that course controls distance, and that course and distance control quantity. Following Ayers v. Watson (Federal Reporter, March 3, 1885).

APPEAL from Bell. Tried below before the Hon. B. W. Rimes.

This suit was brought by the appellant to recover of the defendants the land described in his petition, originally granted in 1833 by the Mexican government to Maximo Moreno, as eleven leagues situated in Bell county, of which appellant alleged he was the owner. The appellees claimed title in hostility to the boundaries of the Moreno grant as alleged by the appellant, and they set forth specifically the several tracts by them claimed respectively by virtue of locations, surveys and patents, junior to the Moreno grant, and asked affirmative judgment therefor respectively.

The cause was submitted to a jury, verdict for defendants, and judgment rendered thereon against the appellant.

Enough of the facts to understand clearly the opinion will be found stated in it. To give even a synopsis of the voluminous evidence would not aid in understanding the opinion.

The Maximo Moreno survey is located on San Andres or Little river. A sketch of the survey will be found in the report of the case of Ayers v. Lancaster, which follows this.

*C. L. Cleveland*, for appellant, cited: Ayres v. Watson, decided by U. S. Sup. Ct., October term, 1884; Stafford v. King, 30 Tex., 273; Welder v. Hunt, 34 Tex., 44; George v. Thomas, 16 Tex., 85; Bolton v. Lann, 16 Tex., 96; Bass v. Mitchell, 22 Tex., 285; Buford v. Gray, 51 Tex., 331; Booth v. Strippleman, 26 Tex., 436; Anderson v. Stamps, 19 Tex., 465; Doe v. King, 3 How. (Miss.), 125; Gilchrist v. McLaughlin, 7 Ired., 310; Tyler on Boundaries, 201, 207, 208, 285, 303; Ring v. King, 4 Dev. & Bat., 164.

*A. J. Harris* and *Goodrich & Clarkson*, for appellee, cited: Phillips v. Ayres, 45 Tex., 602; Stafford v. King, 30 Tex., 257; Williamson v. Simpson, 16 Tex., 439; Urquhart v. Burleson, 6 Tex., 502; Booth v. Upshur, 26 Tex., 64.

L. J. FARRAR, SPECIAL JUDGE.— This was an action of trespass to try title instituted by the appellant on May 10, 1881, against the appellees. The appellant deraigns his title from the state of Coahuila and Texas, under a grant to eleven leagues of land issued to Maximo Moreno on the 8th of October, 1833, and now situated

in Bell county. The several defendants claimed title by virtue of junior locations and grants; and in addition to their pleas of "not guilty" they severally pleaded their titles specially, and claimed distinct and separate tracts of land described in their answers respectively, and prayed judgment therefor. Before the trial of the cause in the court below an agreement was made by the appellant and appellees which eliminated from the controversy all questions regarding the validity of the title or titles relied upon on both sides, and it was stipulated that the appellant held a complete chain of transfer to the Moreno title, and that the several defendants had title to the several tracts of land claimed by them respectively, and it was agreed by the parties that the question between the plaintiff and defendants was as to the locality and position of the north boundary line of the Moreno grant.

The effect of this agreement was that if the back or north line of the Moreno grant should be found to be located sufficiently far north to include within its limits the junior grants of the defendant's, judgment should be rendered for appellant, his title being the older and superior; but otherwise judgment should be rendered for the defendants; or, in other words, the issues were narrowed down to a simple question of boundary of the Moreno grant on its north or back line.

Under this agreement the cause was tried and judgment was rendered in favor of the defendants, and the appellant brings the case to this court for revision.

Thirteen errors are assigned, but only the first, third, fifth, sixth and twelfth errors are discussed in appellant's brief, and these only will be noticed.

The first assignment of error is that the court erred in its charge in stating to the jury: "It is a matter of no consequence what corner or line of the survey was first made."

The respect in which this is error is not pointed out by the assignment. It does not give undue prominence to either the beginning or closing corner in the effort to discover where the boundary lines of the survey actually are, and when considered in connection with its context it will be seen that the charge objected to was not improper. The entire sentence of which this assignment is a part reads thus:

"It is a matter of no consequence which corner or line of the survey was first made; but the question is, Did the surveyor mark the boundaries or corners defining the land intended to be conveyed, and does the title describe the boundaries and corners in such a

manner that they can now be found on the ground and identified as the true boundaries and corners of the land described in the title?"

We are unable to perceive the objection to this charge. It simply explains the duty of the surveyor in making his survey, in order to segregate any given piece of land from the public domain, and should he do less, he would fail to accomplish his design and fall short of his duty. This charge could not injuriously affect appellant.

The third assignment of error is that the court erred in giving this instruction to the jury, viz.: "In order to reconcile or elucidate the calls of a survey in seeking to trace it on the ground, the corner called for in the grant as the beginning corner does not control more than any other corner actually well ascertained, nor are you compelled to follow the call of the grant in the order said call stands in the field-notes there recorded; but you are permitted to reverse the calls and trace the lines the other way, and you should do so whenever, by so doing, the land embraced would most nearly harmonize all the calls and the objects of the grant."

To make more apparent the necessity of a charge upon this subject, it is proper to examine the record. The testimony of F. W. Johnson, the surveyor who originally surveyed the Moreno grant, in 1833, and of Wm. Duty, one of the chainmen, is to the effect that they established the beginning corner on the left margin of the San Andres river below the point where the Lampasas enters said river, at a pecan with bearing trees described in the field-notes, and then ran the west line (the south line being coincident with the meanders of San Andres river, which had been previously traced for a base or front line), then the north line, and then the east line back to the San Andres river. The evidence develops the fact that Johnson in the year 1860 had testified in the case of David Ayers v. Thos. Lancaster, then pending in the district court of Bell county, that in 1833 he commenced the survey of the Moreno grant at its southeast corner on San Andres river and ran its east line first, thus reversing the calls of the original field-notes. The evidence also shows that different surveyors at different times had endeavored to find and establish upon the ground the lines run and made originally by Johnson, and that some of them had made these experimental surveys by beginning at the southeast corner on the river. In view of this evidence we think the charge complained of was a proper one to be given to the jury, if it was not necessary. The propriety of a charge must be determined by the evidence adduced upon the

trial.   See Case v. Jennings, 17 Tex., 662;  Norvell v. Oury, 13 Tex., 32;  Davis v. Loftin, 6 Tex., 489.

But we understand the rule laid down in this charge to be the law, and to furnish ordinarily a safe guide to ascertain the locality of boundary lines which are in dispute.   See Phillips v. Ayres, 45 Tex., 601;  Ayers v. Watson, Sup. Ct. U. S., in Federal Reporter of March 30, 1885.

The present case differs materially from the two cases just cited in this important particular: that the evidence of Johnson and Duty both shows that all the lines of the Moreno grant were actually traced and measured upon the ground, while in  the case of Phillips v. Ayres there was no such proof, and the west and north lines were treated in the opinion of Judge Moore in that case as lost lines, or at least as lines that had not been found; and in the later case decided in the supreme court of the United States the evidence was that Johnson marked without measuring the east line of the grant, from the northeast corner to the southeast corner on the river.

If it is permissible to reverse the calls and trace the lines a different way from that indicated in the field-notes, in cases where the proof shows some of the lines were not actually run upon the ground, but their length was determined by estimation or calcula- tion simply, it seems to us it is infinitely less hazardous to adopt such a rule in a case where all the lines are shown to have been actually measured by the surveyor who made the original survey. The object of all rules which have been formulated by the courts for locating, fixing and determining boundaries has been to ascer- tain and discover, if possible, the footsteps of the surveyor, and in this way identify the survey that was actually made, and it is ap- parent that a charge which prescribes such a rule for the conduct of the jury can lead to no mischievous results.   We conclude, there- fore, that the charge complained of in the third assignment is not obnoxious to the objections urged by appellant.

It is insisted in the fifth assignment of error that the following charge to the jury was misleading and erroneous: . "That if the evidence does not satisfy your minds that the two hackberries (said to have been found by Sam Bigham on the east line, designated as ' McMillen' or 'Bigham' or 'Hackberry' corner), if found, are the ones called for and marked by the original surveyor (as the north- east corner of the Moreno grant), you will, from the whole proof, so fix the unmarked or disputed lines called for in the grant as in your judgment most nearly harmonizes the calls within the known cor-

ners and marked lines, and if from the evidence you fix these lines so as to include all or any of the lands in controversy, you will find for plaintiff; otherwise for the defendants."

If this charge stood alone and unqualified by other charges there might be some force in the objection urged; but the court had already informed the jury that they should follow in the footsteps of the surveyor, and that a call for course and distance generally yields to calls for artificial objects, such as blazes and hacks upon line and bearing trees, and marked corners, etc., and calls for artificial objects yield to natural objects, such as rivers, creeks, ravines, springs, etc., and that they should be governed by these general rules.

We do not think the charge complained of left the jury to disregard these rules and fix the unmarked or disputed lines, from the whole proof, as their fancy or caprice might suggest, but it required that they should fix the lines in subordination to these general rules in such a way as in their judgment would most nearly harmonize the calls with the known corners and marked lines. This is in accordance with rules repeatedly recognized by this court. See Stafford v. King, 30 Tex., 257; Booth v. Strippleman, 26 Tex., 441; Booth v. Upshur, 26 Tex., 70.

The charge must be taken as a whole, and if it appear that any part of it taken separately is improper, it is not sufficient cause for reversal unless it should also appear from the statement of facts that the jury may have been misled. See Able v. Lee, 6 Tex., 427.

We come now to a consideration of the sixth assignment of error, omitting the twelfth assignment, which was that the court erred in overruling the plaintiff's motion for a new trial. The sixth assignment is that " the court erred in charging the jury as follows: If you are not able to fix the disputed portions of the lines with reasonable certainty, you may, taking the river as a base, so extend the eastern and western lines from the admitted corners on the river, so that a line run north seventy degrees west, or south seventy degrees east, connecting the extremities of said lines, as will embrace eleven leagues of land; and if said back line so run would not include any portion of the land claimed by defendants in controversy, you will find for the defendants."

In giving this charge to the jury we think there was error. We might safely rest our conclusions upon the opinion of the supreme court of the United States in the case before referred to of Ayers v. Watson, in which Justice Bradley, speaking for this court, says:

" It still remains to consider the correctness of that part of the charge given which was excepted to by the defendants (the charge

referred to being identical with the one quoted above and in reference to the same grant). The substance and effect of it was that if the jury were not able to fix the disputed lines, or the disputed portions of the lines, with reasonable certainty, they might locate the back or northerly line so as to embrace eleven leagues between it and the river, and between the east and west lines as acknowledged by the parties. This was allowing the jury to make the location of the back line depend on the quantity of the land inclosed, if they could not fix it from the evidence. In this we think there was error in the charge. The whole context immediately connected with the passage excepted to was in substance this: that if the testimony satisfied the jury that the two hackberries discovered were identical with those called for in the grant, the back or north line must start from or end with *them*, running in a course north seventy degrees west or south seventy degrees east; but that if the testimony did not satisfy them as to the identity of the trees, then they must fix the unmarked or disputed lines so as most nearly to harmonize the calls with the known corners and the undisputed line (that is, the east line). If the jury were not able to fix the disputed lines or the disputed portions of lines, then they might resort to quantity; that is, locate the back line between the two recognized side lines so as to take in eleven leagues. Now it seems to us that the jury should have been told that if the testimony was not sufficient to identify the two hackberries with those called for in the grant, and could not fix the northeast corner nor the back line by any other marks or measurements, then they should fix it by the courses and distances of the first and second lines of the survey, except that the second line should be extended so as to meet the recognized east line as marked and extended beyond the hackberries. This would have been in accordance with the rule that course controls distance, and that course and distance controls quantity, which is correctly laid down in Stafford v. King, 30 Tex., 257, and Welder v. Hunt, 34 Tex., 44."

In addition to the reasons assigned by Judge Bradley for reversing the case of Ayers v. Watson, let us examine for a moment the facts appearing in the record in the case now before this court, for the purpose of pointing out the impropriety of the charge in question. The contest in this case was, as before stated, the true locality of the north line. It will be remembered that Johnson's field-notes, in describing this north line, call to cross Cow creek at eight thousand varas from the northwest corner of the grant, and the principal branch of this stream at ten thousand six hundred varas,

and to terminate at twelve thousand five hundred and eighty varas at two small hackberries. It is admitted on both sides that the southwest and southeast corners of the grant have been found, and that the east line is marked from the river San Andres on the course of this line as far as the distance called for in the grant.

A witness, Turner, testified that on the line claimed by the appellees (and Turner was a practical surveyor) as the true north line of the Moreno grant, which is known as the McMillen line, he found a large elm tree marked with a blaze, standing about midway between Big Elm and Cotton Wood creeks in the prairie, and near Little Elm creek an old gum elastic tree blazed, and on Williamson's branch a willow tree fifteen inches in diameter with a blaze on it. On the line which appellees insist is the real north or back line of the survey, it is found that it crosses Cotton Wood (or Cow) creek at about eight thousand five hundred and ninety varas, while if the north line should be where appellant claims it to be, a line run south seventy degrees east from the northwest corner would cross Little Elm creek at two hundred or three hundred varas from the northwest corner, and Cotton Wood creek at between three thousand and four thousand varas from said northwest corner. Turner also testified that he traced a line running north twenty degrees east from the McMillen or hackberry corner, a distance of nearly four thousand varas, and that in this distance he found five or six trees marked with old blazes. This is on the east line projected beyond and north of the hackberry corner. He says he found some trees with old blazes on the line as claimed by appellant, and that at the point of intersection of this line with the east line prolonged about four thousand varas north twenty degrees east beyond the hackberry corner, he found some rotten hackberry wood, and near this point there were several hackberry stumps. To adopt the place where the two hackberries stood as the northeast corner, there would be an excess in the grant of fifteen thousand acres, and an excess of twenty-four thousand acres if the northeast corner should be fixed at the point where appellant claims it to be; and these estimates are based upon the assumption that the San Andres river, between the southwest and southeast corners, is a straight line, which is extremely improbable. It is probable that these estimates of excess are too small, and that on account of bends made in the river between the southwest and southeast corners, there is a greater excess of land embraced within the limits of this grant than either of the above estimates would indicate, the excess depending, of course, upon the locality of the north

line, and whether the bends in the river are northward or southward. However this may be, upon the hypothesis that the river line was a straight line, the least amount of excess this grant is estimated to contain is fifteen thousand acres, and this was a fact in proof before the jury and not denied or disputed. The field-notes also show that the east and west lines are not parallel to each other, but are constantly converging toward each other at the rate of a little over sixty-seven varas per mile. The proof shows that this grant has a front of thirteen thousand eight hundred and twenty-six varas, while the proper front of an eleven-league grant is thirteen thousand seven hundred and fifty varas, having an excess on its front or south line upon the river of seventy-six varas. Now with the evidence before the jury in reference to the McMillen north line, with its calls for natural objects (the crossings on the streams), and the testimony in reference to the locality of the hackberries, and the blazes found on the trees on this line, all tending more or less persuasively to fix this as the north line, and with the testimony about the blazed line running north twenty degrees east about four thousand varas beyond the hackberry corner, or the northeast corner, as claimed by appellees, and the blazed trees found on the exterior north line, which appellant claims to be the true north line, it was error to tell the jury they could determine the lines and boundaries of this grant by allowing it an area of two hundred and seventy-five million square varas, for this was in effect the charge. While area might be resorted to under some circumstances and in exceptional cases, the proof made the charge upon this subject inapplicable in the present instance. It was in effect to tell the jury that they might disregard the superior and controlling calls of the grant, and rely on the least certain of all modes of determining its boundaries by having reference to its quantity of acres or area.

A charge, as has been said before, must be framed with reference to the facts in proof before the jury, and we conclude that there is nothing in the record of this case from which a resort to quantity or area can ever become necessary in order to fix the north or back line of this grant, but everything to forbid recourse to this unsatisfactory means of ascertaining its lines and limits. Stafford v. King, 30 Tex., 257; Welder v. Hunt, 34 Tex., 44; Hawkins v. Nye, 59 Tex., 97.

If the north line should be established where the appellees claim it should be, there is an admitted excess of fifteen thousand acres in this grant. Yet the instruction would leave the jury to fix this line south still of the line which appellees themselves insist is the north

line. With the proof before the jury, when the irregular configuration of the grant is considered, we are unable to see how they could have proceeded intelligently and successfully to determine where the lines should be under this instruction.

The charge of the learned district judge who tried this cause in the court below is in our opinion otherwise faultless, but for the error pointed out, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 1, 1885.]