JOHN LINNEY v. JOHN H. WOOD.

(Case No. 1758)

1. SPANISH GRANT—CONSTRUCTION OF LANGUAGE—Our courts are not presumed to be acquainted with the peculiar forms of expression of the Spanish language. These are matters of proof; and, without evidence upon the subject, the language of a Spanish grant translated into English cannot be treated otherwise than as if the original grant had been in English.

2. PATENT AMBIGUITIES—Courts do not solve patent ambiguities, but treat the ambiguous provisions as inoperative and void. (1 Greenl. on Ev., sec. 300; 2 Whar. on Ev., sec. 956.)

3. LATENT AMBIGUITY—CONSTRUCTION—Latent ambiguties are developed by extraneous evidence; such evidence must, therefore, solve them, and through it the jury must arrive at their conclusion. (1 Greenl. on Ev., sec. 292.)

4. SAME—DECLARATION OF PARTIES—EVIDENCE—When the language used in a deed to describe the premises conveyed, is equivocal, ambiguous, or insufficient, subsequent acts or declarations of the partiés, showing the practical construction put upon the words of the description by them, may be resorted to. (Stone v. Clark, 35 Am. Dec., 373.)

5. SAME—Such evidence is not introduced to show the real meaning of the words, but the construction put upon them in the particular case by the parties, and is to be considered by the jury, and not the court.

6. EVIDENCE—CHARGE—It is error to exclude from the jury the decision of a conflict in the evidence.

7. SAME—See opinion for facts under which it could not be held that an erroneous charge did not influence the verdict of the jury.

8. ESTOPPEL—A defendant cannot be estopped by recitals in deeds when the action is not founded upon those deeds, and he does not defend under them. (Big. on Estop., 269.)

9. SAME—REQUISITES—An important requisite of estoppel is that it should be certain, precise and clear; and nothing should be left to doubtful inference. See opinion for facts under which a deed did not estop parties claiming under it.
10. SAME—JUDGMENT—See opinion for a judgment which did not operate as an estoppel.
11. SURVEY—NATURAL OBJECTS—COURSE AND DISTANCE—While natural objects control course and distance, as a general rule, yet neither of these should absolutely control the other when that other most truly indicates the proper locality of the tract. (Following Jones v. Burgett, 46 Tex., 284.)
12. BOUNDARIES—OLD SURVEYS—EVIDENCE—In determining the boundaries of lands surveyed long ago, the signs of which have been destroyed, and the location of which is not within the knowledge of living men, many facts tending to solve the question as to their true location are permitted to go to the jury, which would be excluded in other cases.

APPEAL from Victoria. Tried below before the Hon. H. Clay Pleasants.

This was a suit of trespass to try title, brought by appellant against appellee to recover a league of land originally granted to Jesusa de Leon, lying in Refugio county, Texas. The venue was changed by agreement to Victoria county. A trial was had before a jury, and a verdict and judgment rendered for the appellee, Wood. The controversy was over the division line between the Juan Pobedano and Jesusa de Leon tracts.

The heirs of Dimmitt owned these two tracts by inheritance, but it did not appear by the testimony offered that they had any personal knowledge of the corners, lines, or boundaries. Before partition, they had conveyed to Toups a small tract described as being the southeast corner of the de Leon league, and conveyed to Curbello a smaller tract described as out of the northwest corner of the Pobedano league; but it did not appear by the testimony offered that any of the Dimmitt heirs furnished the description or field notes of these tracts.

The deed of partition between the Dimmitt heirs did not·refer in terms to the deeds to Toups and Curbello, but assigned to certain of the heirs the Jesusa de Leon league, with this recital : "It being understood that six hundred and seventy-four acres have been sold out of it." And assigned to certain other heirs the Juan Pobedano league, with this recital : "It being understood that one hundred and seventeen acres have been sold out of this Pobedano league;" and the deed also divided each league among the heirs to which it was assigned. The appellee, John H. Wood, claimed the Pobedano tract, and John Linney the de Leon tract, through the Dimmitt heirs.

Among other things to support his plea of estoppel, plaintiff offered in evidence the deed of partition between the Dimmitt heirs, which was excluded. He then offered to prove by himself that he was pre-

sent when the survey of the land conveyed to Toups was made; that he was familiar with the boundaries of the Pobedano and the de Leon tracts as recognized and pointed out by C. A. Russell, attorney of the Dimmitt heirs; that he was familiar with the tracts; had examined the deed of partition between the Dimmitt heirs, and purchased the de Leon with reference thereto as the boundary of the same; that he purchased relying on that boundary. This evidence was excluded. Also, after the partition deed had been excluded, plaintiff offered in evidence a patent to Thos. P. Williamson with regular chain of transfer to himself, and offered to prove in connection therewith, for the purpose of sustaining his plea of estoppel, that he purchased the land claimed by the patent, believing the same not to be covered by the de Leon league, and was induced to do so by the acts of the Dimmitt heirs in fixing the boundaries of the Pobedano and de Leon by their partition and deeds to Toups and Curbello, and by the defence set up by Wood in the suit instituted by plaintiff against him and John Ireland. This testimony also was excluded.

O'Connor and Clark were permitted to state that in 1838 or 1840 James Power, who claimed a grant of land below the Jesusa de Leon grant, pointed out to them the upper line of the grant claimed by him, and were also permitted to state, for the purpose of establishing the lower line of the Jesusa de Leon grant, where that place was, which was objected to upon the ground that Power owned no land; that the grant under which he claimed was a void grant, and, therefore, his testimony as to the boundary between it and the adjoining grant was irrelevant, which was overruled, and the witnesses permitted to testify that the upper line of the Power grant, as pointed out to them, was at about the place where Wood claimed the lower line of the Jesusa de Leon grant to be. Evidence was admitted to prove statements made by Aldrete and Welder, tending to show where they considered the disputed line to have been.

*Lackey, Stayton & Kleberg* and *Stockdale & Proctor*, for appellant, on the charge of the court in fixing the beginning corner, cited : Booth v. Upshaw, 26 Tex., 69; Hughes v. Sandal, 25 Tex., 162; Stone v. Clark, 1 Met., 378, note 3; Livingston v. Ten Broeck, 16 Johns., 22; 1 Greenleaf, 293; 2 Cowen & Hall's notes, 594; Reed v. Stancel, 8 How., 287.

That natural monuments govern course and distance, they cited : Farenholt v. Perry, 29 Tex., 317; Henshaw v. Bissell, 18 Wall., 262; 1 Greenl., sec. 145; R'y Co. v. Ward, 2 Black., 499; Derry v. Cray, 10 Wall., 263; Cook v. Burnley, 11 Wall., 667.

On estoppel, they cited: Kimbro v. Hamilton, 28 Tex., 561; R'y Co. v. Ward, 2 Black., 499; 3 Washburn, 367.

On the exclusion of the judgment, they cited: Williams v. Chandler, 25 Tex., 11; Carpenter v. Butler, 8 M. & W., 206; 4 Kent, 260.

On estoppel, they cited: Iredell's Law, 280; Fraim v. Frederick, 32 Tex., 302; Newcomb v. Hall, 28 Tex., 568; Timon v., Whitehead, 58 Tex., 290; 11 How., 325.

*Glass & Callender*, for appellee, on the instruction of the court, cited: Hughes v. Sandal, 25 Tex., 164; Whar. on Ev., sec. 966; Greenl. on Ev., secs. 277, 278, and note 299.

On estoppel, they cited: Love v. Barber, 17 Tex., 317; Page v. Arnim, 29 Tex., 72; Burleson v. Burleson, 28 Tex., 415; 1 Story's Eq., secs. 386, 391; Brewer v. B. & W. Cor., 5 Metc., 478; Welland Canal Co. v. Hathaway, 8 Wend., 483; Nourse v. Nourse, 116 Mass., 101; Whar. on Ev., secs. 1078, 1155; 4 Kent's Com., 12th ed., 261, 262, and note; 6 Wait's Acts. and Def., 680; Big. on Estop., 303, 306; Williams v. Chandler, 25 Tex., 11; Hob. Land Law, sec. 382; Big. on Estop., 286; Carpenter v. Buller, 8 M. & W., 209.

On the admissibility of the judgment, they cited: 1 Smith's Leading Cases, 627.

On the declarations of Power, Aldrete and Welder, they cited: Stroud v. Springfield, 28 Tex., 649.

WILLIE, CHIEF JUSTICE.—The true location of the division line between the Juan Pobedano and the Jesusa de Leon surveys is the matter in controversy in this suit. These two surveys, together with one of five and one-fourth leagues granted to Jose Miguel Aldrete, front on the Aransas river, the lower line of Aldrete being the upper line of the Pobedano grant, and the lower line of the Pobedano being the upper line of the de Leon grant. No landmarks, natural or artificial, except the Aransas river, are called for in the two last mentioned grants; and the true division line between them depends upon where the lower line of the Aldrete grant is located. This line terminates upon the Aransas river, but calls for no landmarks by which it may be identified. The only objects by which the proper locality of the grants can be determined are those mentioned in the calls for its beginning corner, which is its upper corner upon the river. By ascertaining the locality of this initial corner and running out the Aldrete survey by the surveyor's notes, we can determine with reasonable certainty, where the line which divides it from the Pobedano tract is to be found, and this is one of the means by which the location of the line in controversy can be ascertained.

The beginning corner of Aldrete is thus described in a translation of his grant, made at the general land office in 1852 : "With 13,305 Mexican varas running a line from the aforesaid creek, at the point called El Alamo, about one and a half miles above, where a landmark was set, at the place where the late Martin de Leon's rancho stood."

Another translation made at the land office in 1873, is as follows : "With 13,305 Mexican varas drawing a line from the indicated creek at the point called El Alamo, about a mile and a half more above where a landmark was fixed; and at which place the old rancho of the deceased Don Martin de Leon was found."

Appellant contends that a proper construction of this language puts the beginning corner of the survey at a point on the Aransas creek called "El' Alamo," and that this point was one and a half miles above where a landmark was set at the rancho of de Leon. The appellee contends that the language used means that the landmark was set at the rancho of de Leon, a mile and a half above the point called "El Alamo," and that the first line commenced at the rancho, and not at "El Alamo."

The court below adopted the appellee's construction, and charged the jury that "the grant to Miguel Aldrete fixes the initial or beginning point at the old rancho of Martin de Leon, and in ascertaining the upper boundary of this grant of land, the jury will consider this rancho as the beginning corner of the survey."

If this charge can be supported, it must be upon the ground that this is the true construction of the language of the grant when taken alone, or when taken in connection with such facts as in such cases the judge may call to his aid in making the interpretation. The language describing the corner is very obscure and indefinite ; and we can perceive in the record no testimony which the court alone, without regard to the jury, could have called to its aid, and from which, taken in connection with the language, a definite conclusion as to its meaning could be reached. There was no proof of usage or custom, nor of contemporaneous interpretation, to determine this meaning. It is true that the appellee says the expressions used in the grant are peculiar to the Spanish language, and were intended to describe as a beginning corner the rancho of de Leon, a mile and a half above the point called "El Alamo," but the record discloses no satisfactory proof on this question. The expressions contained in the one league grant to Aldrete, and its practical location by the grantee, do not furnish satisfactory evidence upon this subject, for the proper location of that grant may never have been called in question.

Our courts are not presumed to be acquainted with the peculiar forms of expression of the Spanish language. These are matters of proof; and without evidence upon the subject, we cannot treat the language under consideration otherwise than we would if the original grant had been written in English.

If we regard the case as one of patent ambiguity, then the court is in hopeless uncertainty as to its true import and meaning, after all the evidence of surrounding circumstances, and as to collateral facts about which the judge may inquire, has been exhausted. The court does not solve potent ambiguities, but treats the ambiguous provision as inoperative and void. 1 Greenl. on Ev., sec. 300; 2 Wharton on Ev., sec. 956.

As to latent ambiguities, which extraneous evidence develops, and which extraneous evidence must, therefore, solve, these do not appear until such testimony has reached the jury, and through it the jury must arrive at their conclusion. 1 Greenl. on Ev., sec. 297.

In addition to the uncertainty and obscurity apparent in the language of the description, it would seem that there was an apparently latent ambiguity developed by the evidence. This was in reference to the point called "El Alamo"—in English, "The Cottonwood"—mentioned in the grant. Some of the evidence tended to show that the rancho de Leon was known as "El Alamo," from a cottonwood tree standing three-quarters of a mile below it, in the edge of the river; other testimony showed that the tree stood four hundred yards below the rancho; and other testimony was to the effect that that tree and the rancho were parallel to where the upper line would be, if run according to the claim of the appellant. There was still other evidence showing that there was a point known as "Los Alamos," (which is the plural of "El Alamo") about a mile above de Leon's ranch, where a cluster of cottonwood trees is situated.

This evidence raises some doubt as to the location of the point "El Alamo," which had a material bearing upon the matter in controversy between the parties.

Whether, therefore, we are to treat the case as developing either a patent or a latent ambiguity, the court should not have charged the jury as to the beginning corner of the Aldrete survey.

The true rule in such cases on a question of boundaries seems to be: "When the language used in a deed to describe the premises meant to be conveyed is equivocal, ambiguous or insufficient, the subsequent acts or declarations of the parties, showing the practical construction put upon the words of the description by them, may be

resorted to for the purpose of ascertaining their intention." Stone v. Clark, 35 Am. Dec., 373, and authorities cited.

Evidence of this character is of course for the jury, and not for the court. It is not brought in to show the real meaning of the words, but the construction put upon them in the particular case by the parties.

In this case there was conflicting evidence upon the subject, but, by the charge of the court, the decision of the conflict was, in effect, excluded from the jury.

It is true that there were in evidence other facts besides the location of the Aldrete corner, from which the situation of the division line between the Pobedano and de Leon grants could be ascertained. The practical location of it by the owners of these two grants, or their acquiescence might fix it, for the purposes of this suit, at a place where it never would be located by any construction, practical or otherwise, of the description of the Aldrete corner. There was evidence of this character as to the location of this line, but we cannot say that the jury were wholly influenced by it in finding in favor of the defendant. We cannot say, therefore, that the charge of the court, fixing the beginning corner of Aldrete at the de Leon grant had no influence upon the verdict, and, in such cases, the erroneous charge must lead to a reversal of the judgment.

The court was correct in its rulings upon the question of estoppel. Wood cannot be estopped by reason of the recitals in the deeds to Toups and Curbello, as this action is not founded upon those deeds, nor does Wood defend under them. Big. on Estop., 269.

As to the partition deed between the heirs of Dimmitt, there are no recitals in it which show where the boundaries of either the Pobedano or de Leon leagues are to be found, and, hence, none which estop persons claiming under that deed from insisting upon their location according to the truth of the matter.

The deed recites that six hundred and seventy-four acres had been previously sold out of the de Leon league and one hundred and seventeen acres out of the Pobedano league. It does not show where these tracts previously sold were located, nor to whom they had been conveyed, nor give any facts by which either tract may be identified. One important requisite of an estoppel is that it should be certain, precise and clear. If other deeds are to be brought in to aid the description of the land, the reference to them should be made with certainty, and nothing should be left to doubtful inference. Even if we could ascertain with certainty that the conveyances to Toups and Curbello were referred to, and they could be used in evidence against

a stranger, there is nothing in them which fixes, with anything like certainty, the division line between the de Leon and Pobedano grants. To this it may be added that at the time these deeds, as well as the partition deeds, were made, the Dimmitt heirs did not know the boundaries of these grants, and owning both, it was not necessary that they should be particular as to locating the division line between them when conveying to other parties. A mistake in its location, under such circumstances, should not estop a party claiming under it from setting up and asserting the true division line, more especially, as the mistake, if such it be, was brought about by the conduct of his adversary, who relies upon the estoppel. Big. on Estoppel, 303, 306 ; Hobby's Land Law, sec. 382, and authorities cited.

The deeds to Toups and Curbello, as well as the partition deed, having been excluded, there was no relevancy or importance in the evidence of Linney, or in the patent to Williamson. The latter, however, seems to have been admitted. We see nothing, therefore, in the fourth and eighth assignments of error.

In the case of Linney v. Ireland & Wood, the question was whether Linney or Wood had the prior right, as purchaser from Ireland, to one-half of the Jesusa de Leon league. There was no question in that case as to where the lines of the league were. Linney was held to have the best right to the half league, no matter where it might be located. There was no question of boundary between the de Leon and Pobedano grants involved in the case, nor can we see how it could have been, nor did the decree fix it in one place rather than another. Linney recovered one-half of the de Leon league. Wood sets up in this case no title to any portion of that league. He does not claim the land in controversy under that grant, but under the grant to Pobedano; hence, the judgment did not operate as an estoppel as against Wood in the present suit. Big. on Estoppel, 37.

The court did not err in refusing to give the special instruction made the subject of the second assignment of error. Whilst natural objects, control course and distance, as a general rule, yet "neither of these should absolutely control the other, when that other most truly indicates to the minds of the jury the proper locality of the tract." Jones v. Burgett, 46 Tex., 284.

The court, in the case cited, say : "There is no rule of law which makes a call for a natural object under all circumstances the controlling call, so as to preclude the consideration of other evidence as to the true locality of the land." To have charged that the configuration of the Aransas river should absolutely and in any event control course and distance would have been in violation of the above prin-

ciple, and would have been especially improper under the evidence in this case. The court in its general charge had given the appellant all the advantage he was entitled to by reason of the configuration of the river as shown by the maps; and, in that portion of the charge complained of in the third assignment, was especially correct in expounding the law as applicable to the facts of the case. This charge authorized the jury to consider natural objects in connection with course and distance, and the location of surrounding surveys, and from all these things, taken together, to determine the boundary in controversy.

The error complained of in the first assignment demands a reversal of the judgment below. As the cause will be remanded for a new trial, we will add that the grants to Cobian and Downey should be admitted in evidence as tending to show the opinion at the time of their issuance as to the upper line of the Aldrete five and one quarter leagues, as they were issued but a very short time after the date of the grant to Aldrete.

In reference to such matters as boundaries of lands surveyed long ago, the signs of which have been destroyed, and the location of which is not within the memory or knowledge of living men, many facts, tending to solve the question as to their true location, are permitted to go to the jury which the rules of evidence would exclude in other cases. Hence, the declarations of deceased persons are received. The evidence afforded by these grants is of a somewhat similar nature, and furnished a circumstance, though it may have been very slight, as to the received opinion in reference to the upper line of the Aldrete grant soon after it was issued.

There was, of course, no error in admitting the declarations of Power, Aldrete and Welder, as they were deceased persons, who, at the time of making the declarations, were in a situation to possess information as to the facts concerning which their statements were made. Stroud v. Springfield, 28 Tex., 649.

For the errors pointed out the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 26, 1886.]