## S. M. SWENSON v. J. J. WILLSFORD.

### No. 7176.

. **Surveys — Reversing Calls.** — Survey was situated on left bank of the Colorado River.   The northwest and southwest corners were sufficiently identified.   The field notes called to begin at northwest corner, thence down the river; thence east, north, and west, to beginning.   There was testimony showing that the north line had been run—marked line being found as far as the timber extends.   The east and south lines were not run.   To run out the survey by following the calls as in field notes places the east line further from the river than if survey is made reversing the calls and measuring from the northwest corner thence east, south, west, and up the river.   In either way run, the survey is in excess in quantity.   *Held,* that inasmuch as the north line appears to have been actually run, the trial judge was authorized to reverse the calls and thus fix the east line.

APPEAL from Mills.    Tried below before Hon. W. A. BLACKBURN. No statement is necessary.

*Mathews & Wood,* for appellant.—1. Whilst it is permissible to reverse the calls and trace the lines of a survey in a direction different from that given in the field notes thereof, yet there must be some reason

for so doing, and it should only be done when all the calls and objects of the grant would be thereby more nearly harmonized than by following the calls of the field notes and tracing the lines in the direction therein given. And in this case there was nothing shown that would authorize such reversing of the calls, but under the facts proved as shown by the conclusions filed by the court, the line running north from a point 7411 varas east of the southwest corner, instead of a line running south from a point 8098 varas east of the northwest corner, should have been established as the east line of the survey. Ayers v. Harris, 64 Texas, 296; Ayers v. Lancaster, 64 Texas, 305; Phillips v. Ayers, 45 Texas, 611.

2. The judgment of the District Court so far as it affects the issues between the appellant and appellee and established the east line of the survey by the called length of the north line, should not only be reversed, but this court should render the judgment prayed for by plaintiff and establish the boundaries of the survey in the manner asked for in plaintiff's petition.

*J. R. Cowles*, for appellee.—1. It is a matter of no consequence which corner or line of a survey was first made. Ayers v. Harris, 64 Texas, 296.

2. It is permissible to reverse the calls and trace the lines in a different way from that indicated in the field notes without showing any reason for so doing. Ayers v. Harris, 64 Texas, 300.

3. Course and distance must yield to natural and artificial objects of description. More weight is to be given to marked lines than to unmarked ones. Marked lines control unmarked ones.

4. In the absence of more certain guides, quantity may be resorted to, to fix the limits of a survey.

5. If a survey can be made in different ways, and there is a doubt about the proper way, that construction is to prevail which is most against the party claiming under the uncertain grant. Ayers v. Lancaster, 64 Texas, 312.

TARLTON, JUDGE, *Section B.*—This is an appeal from a judgment rendered by the District Court of Mills County, in favor of appellee against appellant. The suit is in the form of an action of trespass to try title, brought by appellant against appellee and other defendants, to recover all of the William McFarland league and labor of land in Mills County, except a few small subdivisions to which the plaintiff disclaimed title. The controversy, however, is here confined to the appellant and the appellee, and the sole issue involved refers to the fixing of the east boundary line of the William McFarland survey. It is contended, that this survey, owned by the appellant, conflicts on its east line with two 640-acre surveys in the name of the International & Great Northern Railway Company, the A. J. Kirby survey, and an-

other 160-acre survey, all owned by the appellee. If this contention be correct, the appellant is entitled to judgment, as the McFarland survey is senior.

We can not more accurately state the issue and its solution by the trial court than by inserting the following extract from the conclusions of law and fact filed by the court:

"1. The field notes of the William McFarland survey are as set forth in plaintiff's petition. [We deem it unnecessary to copy these field notes.]

"2. The issues between plaintiff and defendant Willsford were reduced to the location of the east boundary line of the McFarland survey.

"3. The field notes of the McFarland survey call for its beginning and northwest corner at the southwest corner of survey No. 53 (the Seavy survey) on the east bank of the Colorado River, and thence down the river with its meanders [giving the meanders] to the northwest corner of the Winston survey No. 51; thence east, north, and west to place of beginning; calling for the north line of the survey to be 8098 varas long and the south line to be 7411 varas long.

"4. The northwest corner and the southwest corner of the McFarland survey were well established by the testimony; no corner was found when called for at its southwest corner, but the meanderings of the river and other evidence show the location of the corner. No bearing trees were clearly established at the northwest corner, but there was some evidence [as hereinafter shown] of bearing trees found there, and the meanderings of the river and other proof established the corners, and these corners I find to be at the place claimed for them by plaintiff and defendant Willsford.

"5. Surveys Nos. 51, 52, and 53 were made by the same surveyor in 1846.

"6. The two International & Great Northern Railway Company surveys claimed by the defendant Willsford were made in 1878, and the Kirby survey claimed by defendant Willsford was made in 1885.

"7. The testimony showed, that if in surveying the McFarland survey you follow the reading of the field notes and begin at its northwest corner, then run down the river to its southwest corner, thence east 7411 varas as called for, thence north 2450 varas (the survey being too narrow), and thence west 8098 varas, the distance called for on the north line (8098 varas) will not reach the river by about 1000 varas, and the line will have to be prolonged that distance to reach the beginning point.

"8. The testimony showed, that if you begin surveying at the northwest corner and run east 8098 varas, south 2450 varas, and thence west, you will reach the river in about 6411 varas, instead of 7411 varas, as called for in the field notes.

"9. The location of the east line of the survey depends upon whether it is established at the termination of the north line by the distance called for in the field notes or at the termination of the south line by the distance called for in the field notes. If at the former, then the McFarland survey will not include any land claimed by defendant Willsford, and plaintiff would not be entitled to recover of him; if at the latter, then part of the lands claimed by defendant Willsford would be within the boundaries of the McFarland survey, and plaintiff is entitled to recover of him.

"10. Two surveyors have surveyed out the lines and testified as witnesses; one of them, Motley, who surveyed and subdivided the lands prior to the institution of the suit, and Livingston, who made a survey after the institution of the suit. They both established the northwest and southwest corners as claimed by plaintiff and defendant Willsford. Motley testified, that he found no marked corners or marked lines; that there were marked bearing trees at the northwest corner, but they were not old marks on the trees, and that the marks on the corner and on a line running east therefrom were not old enough to be the marks of the original surveyor. Livingston testified, that the marks on the trees at the northwest corner are old; that their appearance indicated old marks with later marks on them, and that the marks on the line running east therefrom appeared to be as old as any marks found in the country, and that the marked line does not run the full length of the line, but runs as far as the timber extends; that he found no marks on the east line or on the south line, though the latter runs through timber for the greater part of its length; that he does not claim to be as good a surveyor as Motley, who has had more experience than he has.

"11. The county map of Mills County furnished by the Land Office has the Kirby and International & Great Northern Railway Company surveys traced on it east of the McFarland survey.

"12. The south line of the Seavy survey No. 53 is 6846 varas long, and the north line of the Winston survey is 11,254 varas long.

"13. The testimony of the surveyors in connection with the field notes of the McFarland survey show that the river was not originally closely meandered, but in meandering the surveyor who made the original survey did not include two bends of the river, and by their exclusion two considerable bodies of land were not included in the calculation of the acres of the survey.

"14. The survey is from 50 to 110 varas too narrow.

"15. By locating the east line of the survey by the called length of the north line the survey will have a surplus of 70 acres, and by locating it by the called length of the south line the survey will have a surplus of about 400 acres.

"From the foregoing facts, I find that the plaintiff is not entitled to recover of the defendant Willsford, but that the defendant Willsford

is entitled to have his title quieted to the lands claimed in his answer, and that the east line of the McFarland survey (the line in controversy between plaintiff and defendant Willsford) should be established by running south from the point where course and distance from the northwest corner of the survey as given in the field notes would establish the northeast corner of the survey."

Appellant's two assignments of error, which we do not find it necessary to insert literally, complain alike of the action of the court in reversing the calls of the field notes. Was the court justified in coursing from the northwest corner east, south, west, thence up the river to the beginning, instead of beginning at the northwest corner and running, according to the calls of the field notes, down the river with its meanders to the southwest corner, and thence east, north, and west to the beginning? The appellant seems to claim that the north, east, and south lines of the survey were never in fact traced, but that their length was determined by calculation merely. Under such conditions, we deem it permissible to "reverse the calls and trace the lines a different way from that indicated in the field notes," in order to harmonize the objects of the grant. Ayers v. Harris, 64 Texas, 300; Phillips v. Ayers, 45 Texas, 601. Again, there was evidence tending to show that the north line, which the court (disregarding the order of the calls in the field notes) chose to follow in fixing the survey preferably to the south line, was actually surveyed; whereas, it is certain that the south line was never actually traced by the surveyor. The court, it is fair to infer, was influenced in its conclusion by this evidence, and applied the rule requiring it to follow the footsteps of the surveyor.

We are not prepared to conclude that the court adopted an improper method in establishing the location of the east line of the survey, and recommend that the judgment be affirmed.

*Affirmed.*

Adopted April 26, 1892.