MATADOR LAND & CATTLE CO., Limited, v. CASSIDY–SOUTHWESTERN COMMISSION CO. et al. (No. 8922.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 9, 1918.)

1. BOUNDARIES ⊙⟿37(1)—EVIDENCE—SUFFICIENCY.

In suit to determine true boundary between adjoining surveys, held, that boundary was as claimed by plaintiff.

2. BOUNDARIES ⊙⟿3(2)—CONFLICTS IN SURVEYS.

In establishing boundaries, those calls will be adopted which are more certain, avoid conflicts in surveys, etc., and harmonize with the evident purpose of the state in making the grant, even though a natural object must be disregarded.

3. BOUNDARIES ⊙⟿3(7)—UNMARKED LINES—COURSES AND DISTANCES.

When unmarked lines of adjacent surveys are called for, and when, from the other calls of such adjacent surveys, the position of such unmarked lines can be ascertained with accuracy, the unmarked lines will prevail over course and distance.

4. BOUNDARIES ⊙⟿3(5)—UNMARKED LINES—COURSES AND DISTANCES.

Distance being regarded as more unreliable than course, it follows that, the greater the distance, the greater the probability of error, and vice versa.

5. BOUNDARIES ⊙⟿3(7)—DISREGARDING CALLS —ADJOINING SURVEYS.

The fact that in field notes of a survey there is a call for an unidentified corner of a survey ought not to be given controlling effect, if to do so is to entirely disregard calls for adjoining surveys and cause confusion and disagreement.

Appeal from District Court, Baylor County; J. H. Milam, Judge.

Action by the Matador Land & Cattle Company, Limited, against the Cassidy-Southwestern Commission Company, and another. From the judgment rendered, plaintiff appeals. Reversed and rendered.

Cowan & Burney, of Ft. Worth, and Dickson, Kenan & Newton, of Seymour, for appellant.

Carrigan, Montgomery & Britain, of Wichita Falls, and W. D. Wilson, of Spur, for appellees.

CONNER, C. J. It is agreed in this case that appellant, plaintiff below, is the owner of survey No. 96, hereinafter described, and that the appellee, Cassidy-Southwestern Commission Company, is the owner of survey No. 1, originally patented to T. H. Harkey, situated immediately west of said section 96, and that the only issue involved in this case is as to the true boundary line between said survey No. 96 and said survey No. 1.

The boundary line between the surveys named, as fixed by the judgment of the court below, is 101.2 varas east of where appellant claims that it should be. In the effort to make clear how this result was obtained, we will state that survey No. 96 is one of a series of sections in a block of land surveyed by virtue of certificates issued to the Indianola Railroad Company. The initial survey in this block, which extends some 5 or 6 miles north and south by about the same distance east and west, is survey No. 73. Its calls, omitting those not deemed material, are as follows:

"Beginning at a stake in prairie 7 miles N. and 4 ms. W. from N. E. cor of a L. & L. survey in the name of Wm. Cain at the N. W. cor. No. 178, B. S. & F.; thence W. 1900 vs. stake; thence S. 1900 vs. stake; thence E. 1900 vs. S. W. cor. Sd. No. 178; thence N. 1900 vs. to the place of beginning. Surveyed on the 11th day of Nov. 1875."

The survey No. 178 mentioned in these field notes is a section in the northwest corner of a block of surveys in the name of John H. Gibson, situated to the east of the Indianola Railway Company block. The Gib-

son block, so far as is necessary here to describe it, extends 7 miles north and south by 4 miles east and west. Surveys 147, 148, 152, 151, and 178 constitute the northern tier of surveys on the Gibson block; survey No. 178 being in the northwest corner of the block. Survey No. 136 is in the southeast corner of the Gibson block as above described, and its calls are as follows:

"Beginning at a N. E. corner of Wm. Cain survey L. & L. stake, whence mesquite 2 in. dia. brs. S. 23, W. 52 vrs.; thence N. with west B. L. of No. 135, 1900 vrs. to E. Mnd; thence W. 1900 vrs. to stake; thence S. 1900 vrs. to stake; thence E. 1900 vrs. to the place of beginning."

The Wm. Cain survey, called for in the field notes of No. 136, is a large survey of about 2½ miles square. The northeast corner of the Wm. Cain, as called for in the field notes of No. 136, cannot be identified on the ground. The location of this corner of the Wm. Cain can be determined only by course and distance from the southwest corner of this survey, which is identified as an original corner, and the only one of the Wm. Cain corners that can be found. Nor was there found on the ground any original corners in the Gibson block, except the common corner on the north between surveys 147 and 148, and between surveys 152 and 151. The surveys along the eastern boundary of the Indianola Railway Company block all call for the western tier of sections in the Gibson block. Some of them also called for the northeast corner of the Wm. Cain survey, as in the case of the field notes of survey No. 73 hereinbefore given. The field notes of these surveys call for stakes on the common line between the Indianola Railway Company and Gibson blocks, but the common line between these blocks, as called for in the field notes, is not a marked line, being in the prairie, nor does the evidence disclose that any of the original stakes called for can be found.

[1] Survey No. 96, owned by the appellant in this case, is in the third tier of the block from the north and on the western boundary of the Indianola Railway Company's block, and the court arrived at the result shown by the judgment by fixing the west boundary line of survey No. 96 by course and distance from the northeast corner of the Wm. Cain survey, instead of fixing the boundary from the northwest corner of survey 178 in the Gibson block. Appellant insists that the true western boundary of survey No. 96 should be determined from the calls in the Indianola block for the surveys in the Gibson block rather than from the northeast corner of the Wm. Cain survey, and, after as careful a consideration of the evidence as we have been able to give it, we agree with appellant's contention in this respect.

It appears from the evidence that the Gibson block was surveyed between the 2d and 4th days of November, 1875, and the Indianola block, as shown by the field notes, was surveyed on the 11th day of November, 1875, and both blocks were surveyed by deputy surveyors of the Young land district. It is evident that the purpose of the surveyors in putting in these two blocks of land was to make the line between them a common one; there was no purpose to create conflict between the blocks, for the instructions from the General Land Office, as shown by the evidence, were to the effect that the Indianola Railway Company's block should so join the Gibson block on the west, and the field notes of the surveys in the two blocks returned to the General Land Office show that there was neither a vacancy nor a conflict between the several blocks named, and the maps from the General Land Office, as recognized for many years, so show.

Adverting to what has already been stated, the calls in survey 73, the initial survey in the Indianola block, cannot be identified on the ground; that is to say, the original corner stakes and line of No. 178 cannot be so identified, nor can the northeast corner of the Wm. Cain be so identified, but by going 2 miles course and distance from the northwest corner of survey No. 178 there is to be found an identified corner on the northern line of the Gibson block, to wit, the common corner between surveys 151 and 152. Then 2 miles farther east is another identified corner in the line of the Gibson block, to wit, the common corner between surveys 147 and 148. By following course and distance from these identified corners, the northwest corner of 178, called for in the field notes in survey 73 in the Indianola block, can be fixed on the ground with, as we think, greater certainty than the same point can be located by running course and distance from the southwest corner of the Wm. Cain, not called for in the field notes of survey 73, north 2½ miles, in order to establish the northeast corner of the Wm. Cain, called for in the field notes of survey 73, and from thence running course and distance 7 miles north and 4 miles west.

[2, 3] One of the rules adopted by the courts in establishing boundaries is that those calls shall be adopted which are more certain, avoid conflicts in surveys, etc., and harmonize with the evident purpose of the state in making the grant, even though other calls less certain, even though a natural object, must be disregarded. J. W. Robinson v. Elias Mosson et al., 26 Tex. 249; Bass v. Mitchell, 22 Tex. 285; Jones v. Burgett, 46 Tex. 284; Linney v. Wood, 66 Tex. 22, 17 S. W. 244. In the leading case of Maddox Bros. & Anderson v. Fenner, 79 Tex. 279, 15 S. W. 237, it is said that:

"When unmarked lines of adjacent surveys are called for, and when from the other calls of such adjacent surveys the position of such

unmarked lines can be ascertained with accuracy, and when, in the absence of all evidence as to how the survey was actually made, there arises a controversy as to whether course and distance or the unmarked line of another survey shall prevail, we see no good reason why the survey line should not be given the dignity of an 'artificial object' and prevail over course and distance."

To the same effect is the case of Hermann v. Thomas, 168 S. W. 1048.

The rule so suggested leads, we think, to the conclusion that we have reached. The unmarked line on the western boundary of the Gibson block, for which all the bordering surveys in the Indianola block call, can be located with reasonable certainty by course and distance from the established corners before referred to on the north line of the Gibson block, and, as we think, the surveyor, in putting in the Indianola block, much more probably located the beginning corner of the Indianola block from these two known corners. These two blocks were surveyed within a few days of each other by deputies of the same land district, and we think it fairly inferable that the deputies, locating the Indianola block so soon after the survey of the Gibson block, most probably then saw upon the ground the stakes called for along the west line of the Gibson block. It seems improbable to us that the surveyor, in beginning the location of the Indianola block at the northwest corner of survey 178 in the Gibson block, would have surveyed from the southwest corner of Wm. Cain survey, some 9½ miles in a southeasterly direction in order to obtain his starting point. Both calls reasonably identify the beginning point at the northwest corner of survey 178, except that, if the calls from the northeast corner of Wm. Cain be adopted as the controlling call, the distances are exhausted before reaching the beginning point, thus creating a conflict of 101.2 varas, which it was the evident purpose of the surveyor not to make, and which, as evidenced by the maps from the land office, was not so intended by the land department of the state. It is said in the cases that, of all the indicia of the locality of the true line as run by the surveyor, course and distance are regarded as the most unreliable; distance being regarded as more unreliable than course, for the reason that there is a greater probability that a chain carrier may lose count or report distances incorrectly by mistake or design than that there was an error in the compass which gave the course. See Lilly v. Blum, 70 Tex. 704, 6 S. W. 279; Ayres v. Harris, 64 Tex. 296; Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304.

[4] If the greatest liability for error exists in the calls for distance, it must follow that the greater the distance the greater the probability of error, and hence the ratio of certainty must increase as the distance is decreased. This is said to illustrate the conclusion that we have reached that in locating the lines of the surveys in the Indianola block greater certainty of true results is obtained by beginning at the northwest corner of survey No. 178 as fixed from the nearby established corners in the north line of the Gibson block. And inasmuch as it seems to be conceded that the several surveys in the Indianola block all in regular sequence follow one another and call for each other, and that if survey No. 96 be located by course and distance from the northwest corner of survey 178 in the Gibson block, as we have indicated should be done, that the western boundary of survey 96 is as plaintiff below and appellant here claims that it should be, and not as claimed by appellee, or as fixed by the court in its judgment.

[5] The fact that in the field notes of survey 96 there is a call for the unidentified northeast corner of the Wm. Cain ought not, we think, to be given controlling effect. To do so is to entirely disregard the calls in the same field notes for the two adjoining surveys in the Indianola block and cause confusion and disarrangement in all surveys therein. By disregarding this call, and giving effect to others, as we have indicated, the harmony of the entire system is preserved, and this is a factor worthy of consideration in the process of arriving at the correct result. Particularly is this true in view of the further fact that appellee's survey is junior in point of time to the surveys in the Indianola block by some 30 years, with one of its calls for the southwest corner of 96, and no evidence is pointed out tending to show that, by fixing the west boundary of 96 as we have indicated, there will be any excess in 96, or any deficiency in appellee's survey.

In view of the conclusions stated, other assignments are thought to be immaterial, and it is accordingly ordered that the judgment below be reversed, and here rendered for appellant in accordance with the conclusions above announced.