## Gault *versus* McGrath *et al.*

A mortgage was given to secure the payment of certain promissory notes made by the mortgagee for the accommodation of the mortgagor, and the renewals of those notes, from time to time, until the whole should be finally paid: *Held*, that it was not necessary, in order to constitute notes subsequently issued, *renewals* of such original notes, that they should have been issued for the same amounts, at the same periods, and that each successive note should have been applied to take up its immediate predecessor.

A continuing loan of the same credit, by the issue of new notes, from time to time, would, in such a case, be within the terms of the mortgage; and such notes would be secured by it.

APPEAL IN EQUITY from the Common Pleas of *Philadelphia*.

This was a bill in equity by Henry W. Gault against Robert McGrath, Samuel McGrath, and Joseph Lindsay, for the redemption of a mortgage for $4675, given by Samuel McGrath, on the 19th August 1847, to Robert McGrath, and subsequently assigned to Joseph Lindsay the other defendant, on real estate then owned by the said Samuel McGrath, afterwards sold by the sheriff on executions against him, under junior encumbrances, and purchased by the complainant.

The bill averred that the mortgage in question was not given to secure a loan of money, but as collateral security for certain

[Gault *v.* McGrath *et al.*]

promissory notes of the mortgagee for the accommodation of the mortgagor, and that these had been paid.

The answers admitted that the mortgage was given to secure the payment of notes loaned by the mortgagee to the mortgagor for his accommodation, *and the renewals of the said notes, from time to time, until they should all be paid;* and averred that there were still outstanding and unpaid notes, given in renewal of the original ones, to the amount of $2962.

A replication was filed and much testimony taken, but the only question in the cause was, whether the outstanding notes, referred to in the defendants' answers, were renewals of the original notes, to secure which the mortgage was given. The nature of the evidence is fully set forth in the opinions delivered in the court below and in this court.

The complainant had, previously to the filing of this bill, taken various proceedings to contest the mortgage in question, both in the District Court and in the Common Pleas, all of which had resulted adversely to his position.

The court below dismissed the complainant's bill with costs, and the following opinion was delivered by THOMPSON, P. J. :—

" The plaintiff purchased certain property at sheriff's sale, with notice of the existence of a mortgage thereon, held by Robert McGrath, one of the defendants. He alleges in his bill that the said mortgage was given on the 19th day of August 1847, to secure the payment of certain promissory notes then loaned by the said Robert McGrath to Samuel McGrath; that a large part of it, if not all of said notes, has long since been paid, and that, to the extent of such payment, the debt secured by the mortgage has been discharged; and prays that an account be taken of the notes, for which said mortgage was given, and which were intended to be secured thereby, and that the amounts may be ascertained and declared. The defendants in their answers declare that the said mortgage was given to secure notes made by Robert for the accommodation of Samuel McGrath, and delivered to him at the date of the mortgage, and the renewal of the said notes, from time to time, until they should be all paid.

" The evidence consists principally of the answers of the second defendant: these are very voluminous, but when sifted, present the single question, whether the notes therein mentioned were renewals of the original notes, to secure which the mortgage was given.

" The notes in question are fully described in the answers, and are outstanding in the hands of different holders.

" It is unnecessary in determining the present application, to do more than to state the result of the evidence as it appears before us; it being admitted that, if the said notes are renewals of the original notes, the mortgage is a security to that amount.

" The fact of the notes in question being renewals, depends

[Gault *v.* McGrath *et al.*]

chiefly upon the answers of Samuel and Robert McGrath; they both explicitly and positively assert that they were so. Robert McGrath declares that the existing notes were given by him to Samuel McGrath, in continuation of other notes which had been in like manner substituted in renewals for the other notes; that at the time when each new note was given, the note in place of which it was given, was delivered up to him, and either destroyed or cancelled, and that no other notes were given under the security of the mortgage. He further asserts that Samuel McGrath kept the cancelled notes, and that a statement of them was entered upon his books; but that in consequence of a fire which consumed his store and its contents, the notes and books were destroyed, so that they could not be produced.

" Samuel McGrath testifies to the same facts, and entirely corroborates the same statement by Robert.

" One witness only, Mr. McCurdy, testifies to facts contradictory to the answers of the said defendants, but his uncorroborated testimony is not, according to the rule in equity, sufficient to countervail the answers. Other witnesses testify to matters which do not bear directly upon the question of the renewals of the notes, so that the question must be determined upon the answers of Robert and Samuel McGrath.

" These defendants unequivocally assert, that the existing notes were given to supply the place of others, then returned and cancelled, and that they were in this manner a continuation of the notes first given.

" It is contended by the plaintiff, that the facts so proved, do not show that the notes were renewals. That in order to be renewals, they must precisely replace the original notes, both as to amount and time; and that the parties should be required to have paid the proceeds of each renewal into the hands of the holder of the note for which it was substituted. It appears, in the evidence, that Robert McGrath gave the notes to Samuel McGrath upon the receipt of the previous notes, without ascertaining in what manner the proceeds were applied; and that Samuel, at times, used such proceeds in his own business. This, it is contended, prevents the notes, so given, from being considered renewals.

" We know of no rule, however, which prevents a note from being renewed by another note having a longer time to run, or by one or more notes of less amount; nor does it seem necessary that the party who gives the new note or notes, upon the delivery to him of the old ones, should be able to show what became of such note after he had parted with it. It is enough, if it appears that no new note is out, but one which has been substituted for another returned and cancelled, and that the amount is strictly and in good faith within the sum covered by the existing security. The

[Gault *v.* McGrath *et al.*]

answers referred to, which, on this point, are not overthrown by opposing testimony, we must regard as true. They clearly affirm that the notes yet outstanding represent the portion of the original debt yet unpaid, for which the mortgage has, from its execution, been held as security. This position, the evidence produced by the plaintiff, has not shown to be untenable.

"The positive answers of the defendants require to be more than balanced.

"The evidence must preponderate in his favour, before the plaintiff can claim the action of the court in his behalf. There is in this case no peculiar equity. The plaintiff bought with a full knowledge of the existing mortgage, and although he is entitled to be relieved from any amount that has been paid upon the mortgage debt, he cannot discharge his property from the entire debt, without adequate proof.

"This evidence he has sought from the defendants, and it has failed to establish the facts upon which the relief is claimed.

"The court cannot decree a satisfaction of the mortgage upon the payment of a less amount than the outstanding notes identified by the defendants in their answers show to be due.

"Decree. And now, May 15th 1858, this cause came on to be further heard upon the 27th day of March 1858, and the proofs and depositions having been read, and the several matters at issue debated by counsel, it was thereupon, upon consideration thereof, ordered, adjudged, and decreed, as follows :—That the injunction heretofore granted in this cause, and continued until further order, be dissolved, and the complainant's bill dismissed with costs, as against him ; and it is further considered that the complainant and those claiming, or to claim, by, from, or under him as the tenants of the mortgaged premises, have no right to redeem the mortgage, except upon payment of the following amounts, which are secured thereby, viz., the sum of six hundred dollars, being the amount of a note due upon the 19th June 1851; the further sum of six hundred dollars, being the amount of a note due upon the 29th day of July, A. D. 1851; the further sum of four hundred and fifty dollars, being the amount of a note due upon the 3d day of November, A. D. 1851; the further sum of five hundred dollars, being the amount of a note due upon the 15th day of November 1851; the further sum of three hundred dollars, being the amount of a note due the 21st day of May, A. D. 1852; the further sum of one hundred and twelve dollars, being the amount of a note, due upon the 8th of July 1852; the further sum of one hundred and seventy-two dollars, being the unpaid balance of a note due on the 24th October, A. D. 1852; the further sum of seventy-eight dollars, paid by R. McGrath, upon the last-mentioned note, upon the 14th November 1858 ; and the further sum of two hundred dollars dollars, paid by Robert McGrath upon the 18th day of March, A.

[*Gault v.* McGrath *et al.*]

D. 1852, upon the renewal of a note secured by said mortgage; together with interest upon the several amounts aforesaid, from the above-mentioned dates respectively."

From this decree, the present appeal was taken by the complainant.

*McMurtrie*, for the appellant.—The complainant, as owner of the land, had a right to redeem the mortgage : Renshaw *v.* Gans, 7 *Barr* 117; McClurg *v.* Lecky, 3 *Penn. R.* 83; Johnston *v.* Harvy, 2 *Id.* 82. A purchaser at sheriff's sale, holds discharged of every conveyance which was voidable by a judgment-creditor : Foster *v.* Walton, 5 *Watts* 378. He takes every right which the owner could pass by a conveyance : Smith *v.* Johnston, 1 *Penn. R.* 471; Fluck *v.* Replogle, 1 *Harris* 407. And neither notice of the existence of an encumbrance at the sale, nor a levy subject to it, will enlarge or vary its lien as then existing : Aulenbaugh *v.* Umbehauer, 8 *Watts* 48, 50; Mode's Appeal, 6 *W. & S.* 280; Reigle *v.* Seiger, 2 *Penn. R.* 340; Randolph's Appeal, 5 *Barr* 242; Loomis's Appeal, 10 *Harris* 312.

In Pennsylvania, no debt can be claimed under a mortgage than that intended, at its inception, to be secured by it : Dorrow *v.* Kelly, 1 *Dall.* 142; Anderson *v.* Neff, 11 *S. & R.* 212, 223; Friedley *v.* Hamilton, 17 *Id.* 70. The payment of the original debt, or cesser of the original liability or obligation, extinguishes the mortgage : Anderson *v.* Neff, 11 *S. & R.* 222; Craft *v.* Webster, 4 *Rawle*, 252, 256; Brien *v.* Smith, 9 *W. & S.* 78; Rickert *v.* Madeira, 1 *Rawle* 328.

To constitute a note a renewal of any former note, it must be shown that it was given in substitution of the former, and as a mere extension of the credit of that particular note : Bell *v.* Coleman, 2 *C. B.* 268; Russell *v.* Phillips, 14 *Q. B.* 891; Hacker *v.* Perkins, 5 *Wh.* 111; Robinson *v.* Henry, 9 *B. & C.* 449; Davy *v.* Philps, 2 *M. & Gr.* 304–5; Davis & Desauque's Estate, 5 *Wh.* 539; Houser *v.* Irvine, 3 *W. & S.* 347; Dundass *v.* Gallagher, 4 *Barr* 205.

*W. S. Price* and *Brinckle*, for the appellees.—The complainant occupies the same position which S. McGrath occupied when the judgment was recovered, under which the premises were sold: Cover *v.* Black, 1 *Barr* 493–5; Catlin *v.* Robinson, 2 *Watts* 373.

*Renewal* is not a word of art, and has no legal or technical signification : Russell *v.* Phillips, 68 *Eng. C. L.* 900. Whether one note is given in renewal of another, depends upon the intention of the parties : 1 *Bouvier's Inst.* 310, § 803; Russell *v.* Phillips, 68 *Eng. C. L.* 900; Hacker *v.* Perkins, 5 *Wh.* 111.

[Gault v. McGrath et al.]

The opinion of the court was delivered by

READ, J.—Robert McGrath, without any apparent considera-
tion, but from good-will, consented to lend his cousin, Samuel
McGrath, not money, but his name; which seems to have been in
good credit.   This was effected by giving him his notes to the
amount of $4675, in various sums, and at short dates.   As it was
intended to aid Samuel in his business, it was necessary that the
loan of his name should be continued; and this was to be effected
by the issue of new notes, as the others fell due.   The notes were
given, to be used as Samuel thought proper; there being no stipula-
tion that they should be discounted at any particular institution, or
by any particular person.   They formed, in fact, a part of Samuel's
active capital, in his business as a tailor; and were, no doubt, used
originally to pay for goods, or their proceeds were probably
appropriated for such or similar purposes.

To secure Robert McGrath, for the loan of his name in the
shape of notes, Samuel, on the 19th November 1847, executed to
him a bond for $9000, conditioned for the payment of $4675 with
interest, in one year from the date thereof, accompanied by a
mortgage of certain premises in the county of Philadelphia.

This arrangement continued for several years, until Samuel Mc
Grath became embarrassed, and in November 1851, made an
assignment; and all his books, notes, and papers, together with
his bill-book, which contained an accurate account of all the said
notes and renewals, were burned with his store, which was in Hart's
Building, corner of Sixth and Chestnut streets, in the month of
December in the same year.

Some payments were made by Robert McGrath on account of
the renewed notes, and several were left outstanding in the hands
of different persons, to whom he was responsible either as drawer
or endorser.

The appellant, having purchased the mortgaged premises at
sheriff's sale, under a subsequent judgment, filed his bill in the
court below to redeem this mortgage, if anything was due, and to
ascertain whether anything was due.   The evidence on this sub-
ject is to be found in the answers of the mortgagee and mortgagor;
and the allegation on the part of the appellant, the plaintiff below,
is that nothing is due, because these payments were not made on
notes covered by the mortgage, nor are the remaining notes
secured by that instrument.

The construction placed upon the agreement of the parties is
founded upon a strict interpretation of the word "renewal."   The
appellant contends that, as the mortgage was to secure the original
notes, which he asserts to have been at four months, and the
renewals, it must be shown that the remaining notes have been
the regular successors of the original paper, continued from four
months to four months, and each successive note applied to take

[*Gault v.* McGrath *et al.*]

up its immediate predecessor; and several cases have been cited to support this position.

It will be found on examination, that these cases are not applicable, and do not prove that such is the necessary rule of construction, even in renewals between debtors and creditors. "Renewed," and of course "renewal," "is not a word of art; it has no legal or technical signification:" Russell *v.* Phillips, 14 *Q. B.* 900 ; 68 *Eng. C. L.* "Renew," says Webster, is "to grant a new loan on a new note for the amount of a former one;" "Renewal," "reloan on a new note given."

This applies clearly to the relation of creditor and debtor, and may call for a strict construction, when the debtor claims the benefit of an agreement which is to delay the person to whom he is indebted. This is clearly not the meaning of the word, when applied to the present case, where this relation did not exist, and where the transaction is simply a reloan of the name. It is distinctly sworn to by both these defendants, that these notes were the renewals of the original notes; that is, as we understand it, it was a continuing loan of credit through a series of years, forming but one transaction, and of course secured by the mortgage which was given for this very object.

We are therefore of opinion that the decree below, the reasons for which are very clearly and forcibly stated by the president judge, is right, and must be affirmed. We believe this reaches the real justice of the case, as every tribunal before which it has been heard in various forms, has arrived at the same conclusion. The appellant suffers no other injury than that of not having made a successful speculation.

> Decree affirmed, and appeal dismissed, at the costs of the appellant.