FANNIE G. MITCHNIK, Plaintiff, *v.* WILLIAM BRENNAN, Defendant.

Municipal Court of New York, Borough of Queens, Fifth District, March 3, 1936.

*Pike & Bornstein,* for the plaintiff.

*Patrick J. McCann,* for the defendant.

MORRIS, J. In this action the plaintiff is suing for commissions for the years 1933, 1934, 1935, amounting to thirty-six dollars per annum. The complaint indorsed on the summons alleges: "Brokerage commissions of 3% on renewal rental of premises 404 Beach 144th Street, Neponsit, L. I., under written lease dated September 18, 1931, between William Brennan and Philip Salkin; renewal period from September 30, 1933 to September 30, 1936, at the annual rental of $1200, $108.00," and the bill of particulars of the plaintiff sets forth the plaintiff's claim as follows:

" 1. Heretofore and on or about September 18, 1931, plaintiff, a duly licensed real estate broker, procured one Philip Salkin, as tenant of the unfurnished house and garage known and designated as 404 Beach 144th Street, Neponsit, L. I., for the term to commence on the 1st day of October, 1931, and to end September 30, 1933, at the annual rental of $1,600.00.

" 2. The landlord and tenant entered into an agreement of lease covering said period for said rental, and in said agreement of lease it was stipulated that for the term of the within lease and on each

renewal thereof, the lessor agrees to pay to said broker the regular broker's commissions therefor.

" 3. That thereafter, the said tenant renewed its agreement lease and remained in occupancy of said premises from September 30, 1933 to September 30, 1936, at an annual rental of $1200.00.

" 4. That by reason of said renewal and occupancy, plaintiff became entitled to a commission of three per cent on the annual rental, amounting to the sum of $36.00 per annum and there is now due and owing to plaintiff for three years, the commission for three years rental, amounting to the sum of $108.00."

The action of the plaintiff is founded upon a paragraph in the lease on a form furnished by the plaintiff: " The parties herein recognize and agree that Fannie G. Mitchnick is the broker who brought about the within lease and in consideration of such services the lessor agrees to pay to said broker the regular broker's commissions therefor provided for in the commission schedule adopted by the Long Island Real Estate Board, Inc., for the term of the within lease and on each renewal thereof, when made, and further in the event of the sale of said premises by said lessor to the said lessee or his assigns, the lessor agrees to pay the said broker the regular commissions provided for sales in said commission schedule."

The plaintiff on the trial offered in evidence the testimony of the defendant taken pursuant to an examination before trial, and which in part contains the following questions and answers: " Q. Did the tenant, Philip Salkin, at the expiration of the term of this written lease, to wit: September 30th, 1933, continue in occupancy and as tenant of said premises? A. The lease never expired, it was cancelled. The tenant Philip Salkin remained. He occupied the premises and still does. Q. Up to September 30, 1933, did the tenant Philip Salkin pay you the rent for occupying these premises? A. He paid me rent. Q. Now since September 30, 1933, and up to the present time have you received rent for the occupancy of these premises from Philip Salkin? A. Yes. Q. What is the rental that you have received? A. $100 a month. Q. For what period of time have you received the sum of $100 a month from the tenant, Philip Salkin? A. From October, 1932. Q. How do you receive this rent, by check or cash? A. By check. Q. And since October, 1932, and up to the present time, you received the sum of $100 per month as rent? A. Yes."

The defendant testified that in August or September, 1932, and prior to the expiration of the lease, the tenant advised him that he could no longer remain as a tenant, and that as a result of said conversation the lease was canceled; that the tenant after the expiration date of the lease was a month to month tenant paying

$100 per month rent, and offered in evidence checks for August and September, 1932, in the amount of $130 and for October, November and December, 1932, for $100 for each of said months.

The plaintiff is entitled to commissions for the term of the lease " and on each renewal thereof."

" There are several decisions showing that a covenant in a lease to renew it, without providing in respect to the term to be granted or the amount of rent to be paid, implies a renewal for the same term and rent." (*Tracy* v. *Albany Exchange Co.*, 7 N. Y. 472, 474; *Western New York & P. R. Co.* v. *Rea*, 83 App. Div. 576.)

" The term ' renewal ' means something more than the substitution of another obligation for the old one. It has been defined variously as meaning a continuance of the old obligation; the establishment, extension, or reëstablishment of the particular contract for another period of time." (54 C. J. 380.)

" The provision [in a lease] for a renewal of a five-year lease at the expiration of five years ' upon such terms as may be agreed upon ' is of no validity. * * * It is void for uncertainty." (*Swedish-American Nat. Bank* v. *Merz*, [Sup.] 179 N. Y. Supp. 600, 603; *Tracy* v. *Albany Exchange Co.*, *supra*.)

" Renewal " as applied to negotiable instruments means the substitution in place of one engagement of a new obligation on the same terms and conditions. (*Sproul* v. *Beskin*, 179 App. Div. 275.)

In the instant case there has been no " renewal for the same term [two years] and the same rent [$1,600]," and it is conceded that the broker did nothing to induce the tenant to remain in occupation.

The plaintiff contends that, in view of the commission clause in the lease and the words " and on each renewal thereof," she is entitled to commissions for the years 1933, 1934, 1935 even though she did nothing to induce the renewal. In *Williams* v. *Heckscher* (126 Misc. 176, 178) the Appellate Term, First Department, held, where the lessee exercised an option in the lease to renew the lease: " Nor will it do to say that the agreement to pay the additional brokerage was without consideration because the broker did nothing to induce the renewal. The lease as made was acceptable to the landlord and was accepted by him. It was competent for the parties to agree upon any compensation they thought proper for the services of the broker in procuring it."

The Appellate Division in the First Department holds to the contrary in *Allwin Realty Co.* v. *Barth* (161 App. Div. 568, 570) and this case evidently was not considered by the Appellate Term in *Williams* v. *Heckscher* (*supra*). In the *Allwin Realty Co.* case the lease contained a provision by which the landlord agreed to

grant to the tenant a renewal of the lease for a further term of seven years upon the same terms, upon the tenant giving the landlord notice in writing claiming such renewal at least four months before the date mentioned in the lease. The court, aside from holding that an oral agreement to pay commissions for the renewal period was within the Statute of Frauds, and, therefore, void because not in writing, held: " The tenant, however, refused to exercise the option, and the right to an extended term of the lease expired and was at an end. The parties were then at liberty to make a new lease or to make whatever disposition of the property their interests required. * * * If the new lease was not the result of any services performed by the plaintiff and for which the plaintiff should be entitled to recover a commission, plaintiff cannot recover. The new lease itself showed that it was executed, not as the result of the exercise of the option by the tenant, but of an entirely new letting, upon different terms; and it was not, therefore, the result of any of the plaintiff's efforts to procure a tenant that the new lease was executed."

The case of *Mullen & Woods, Inc.,* v. *615 West 57th Street, Inc.* (146 Misc. 599), is offered by both the plaintiff and defendant in support of their various contentions; by the plaintiff in support of her contention that there was a " renewal " of the lease and that there was a special agreement on the part of the defendant in view of the clause in the lease above quoted to pay commissions on subsequent extensions for the years 1933, 1934 and 1935; by the defendant in support of his contention that, in view of the fact the original lease was canceled, a new tenancy created, and the plaintiff did nothing to induce the tenant to remain in the property, the plaintiff is not entitled to recover.

In the *Mullen Case* (*supra*) the plaintiff attempted to collect commissions on a renewed term of a lease where the promise to pay such commissions was oral and where the oral promise was made to pay the commission on the extended term when the option to renew contained in the lease would be exercised and a new lease signed. (144 Misc. 697.) The Appellate Term in reversing the lower court states: " In the absence of special agreement, the plaintiff would not be entitled to commissions on subsequent extensions of which it was not the procuring cause. Nor could the plaintiff recover on the theory that by securing the inclusion of the renewal clause in the original lease it performed services which were of benefit to the defendant. On the contrary, by assenting to the clause which gave the tenant the option of renewal, the defendant subjected itself to a liability without corresponding benefit. Indeed, the plaintiff made no attempt to prove that its

services in procuring such an option in the original lease were of any value to the defendant, and it is manifest that it could not do so."

To sustain an action for a broker's commissions on a renewal rental there must be proof (1) of a special agreement between the broker and the lessor (*Mullen & Woods, Inc.*, v. *615 West 57th Street, Inc.*, *supra*); (2) compliance with section 31 of the Personal Property Law (*Allwin Realty Co.* v. *Barth*, *supra*); (3) that the renewal was for the same term and rent (*Tracy* v. *Albany Exchange Co.*, *supra*); (4) in the event of failure to prove (3), there must be proof that the new lease was the result of services performed by the broker and for which he should be entitled to recover (*Allwin Realty Co.* v. *Barth*, *supra*).

On the law and the facts I find that there was not a " renewal " of the original lease (Plaintiff's Exhibit 1) and that the tenant remained in the property not as the result of the plaintiff's efforts to procure a tenant.

Judgment for defendant dismissing the complaint on the merits.