Rosenblum, Appellant, *v.* Lurie

Argued April 15, 1937.

Before KEL-
LER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARK-
ER, JAMES and RHODES, JJ.

*John C. Bane, Jr.*, with him *Sidney E. Rosenblum*
and *Reed, Smith, Shaw & McClay*, for appellant.

*Nathan Routman*, for appellee.

OPINION BY CUNNINGHAM, J., September 29, 1937:

A. M. Rosenblum, plaintiff below and appellant
herein, is a licensed real estate broker; George Lurie,
defendant and appellee, is the owner of a building at
Nos. 69-71 West State Street in the City of Sharon,
Pa. The action was upon a contract in writing for pay-
ment by defendant to plaintiff of commissions for the
procuring by plaintiff of a tenant, Harry Livingston,
Inc., for the first floor of defendant's premises. The
lease negotiated by plaintiff was for an original term
of five years, beginning April 1, 1930, at a rental of
$250 per month; under its provisions, the lessee had
the option of renewing it for a further term of five years
from April 1, 1935, at a monthly rental of $275, and
also the option of renewing it for an additional term of
five years from April 1, 1940, at a monthly rental of
$300; plaintiff's commissions were fixed at 5% of
"the total rentals received" by defendant, "during the
entire life of the lease . . . . . . and any renewals thereof."

In his statement of claim, filed early in 1935, plaintiff sought to recover two items—a balance of $60, alleged to be owing on account of commissions upon rentals received by defendant during the original term of the lease, and $7.50 as his commission upon a rental of $150, received by defendant, under circumstances hereinafter recited, for the month of April, 1935.

The jury by its verdict awarded plaintiff only $1.05 as the balance of commissions due him upon the rentals received by defendant during the original five-year term and thereby disposed of the only issue of fact raised by the pleadings. The learned trial judge correctly held that the adjudication of the item of $7.50, the commission claimed upon the rental received by defendant for the month of April, 1935, turned upon a question of law—the construction of the contract for payment of commissions. At the close of the trial he directed the jury to render a verdict in favor of the plaintiff upon that item, but subsequently granted defendant's motion for judgment thereon in his favor upon the whole record, notwithstanding the verdict; hence this appeal by the plaintiff.

Although the amount of money in dispute when the suit was brought is small, the decision of the question of law involved upon this appeal is of importance to the parties as it will determine the liability or non-liability of the appellee for the payment of commissions upon the rentals received by him not only for April, 1935, but also during subsequent months.

Contemporaneously with the signing of the lease, appellee executed the agreement upon which suit was brought; it reads:

"Sharon, Pennsylvania,
February 15th, 1930.

"This memorandum is executed for the purpose of acknowledging to A. M. Rosenblum that the said A. M. Rosenblum was solely instrumental in securing Harry

Livingston, Incorporated, a Delaware corporation, as a tenant for the storerooms located at Nos. 69-71 West State Street, owned by me. I hereby agree to pay the said A. M. Rosenblum five (5%) per cent of the total rentals received by me from the said Harry Livingston, Incorporated, payable monthly during the entire life of the lease entered into between them and me, the said George Lurie, and any renewals thereof. The said lease is for a period of five years beginning April 1, 1930, and giving the lessee the option of renewing said lease for two additional five year periods.

"In the event that a sale is made by me, my executors, administrators or assigns at any time during the term of said lease, or either of the two five year renewals, then the entire commission for the remainder of the fifteen year term is to become due and payable immediately, said commissions to be based upon a rental value of $250.00 per month for the first five years, $275.00 the second five years and $300.00 a month the final five years.

"If by any reason the lease in question is terminated and the lessee is relieved from liability thereunder, then and in such event the undersigned is likewise released from all the obligations mentioned herein and this acknowledgment shall be declared null and void.

In Witness Whereof, I have hereunto set my hand and seal this 15th day of February, A. D. 1930.

George Lurie   (Seal)

In the presence of:

    Nathan Routman."

The Livingston corporation has continued to occupy the premises as tenant since April, 1930. However, it was able to persuade appellee to reduce from time to time the rent specified in the original lease. During the original five-year period appellee paid to appellant (with the exception of $1.05) commissions at the rate of 5% of the rent actually received each month, rather

than 5% of $250, and this arrangement was acquiesced in by appellant. By the end of the original term, appellee had received rentals aggregating $12,550. The tenant did not exercise its option of renewal under the lease, but instead secured, on October 24, 1934, a new lease from the landlord for a period of one year from April 1, 1935, at a monthly rental of $150. Apparently this yearly lease has since been renewed from year to year.

The controversy arose because appellee took the position that the last mentioned lease was not a "renewal" of the original lease, and hence there was no obligation on his part to pay commissions to appellant upon the rentals received under its provisions.

The crucial words of the agreement we must construe are:

"I hereby agree to pay the said A. M. Rosenblum five (5%) per cent of the total rentals received by me from the said Harry Livingston, Incorporated, payable monthly during the entire life of the lease entered into between them and me, the said George Lurie, *and any renewals thereof.*" (Italics supplied)

The positions of the respective parties may be thus stated. Appellee claims that the word "renewal," as used in the contract, means only a new five-year lease, containing the same conditions as the original lease and at the stipulated increased rental; hence, a one-year's lease at a reduced rental is not a renewal, and does not entitle appellant to commissions. Appellant, on the other hand, claims it was the intention of the parties that he was to receive commissions on any rentals actually received from the same tenant, as long as the latter continued in possession, no matter what changes in rentals or terms might be agreed upon by appellee and his lessee for the latter's continued occupancy of the premises. These opposing points of view

have been exceptionally well presented in two able briefs.

Of course, if the term "renewal" has a fixed and definite meaning, and refers only to the options given in the original lease, then the judgment should be affirmed. We know of no reason, however, why the term must necessarily be so construed. We have been referred to no decision interpreting the meaning of the term in a contract between a landlord and his broker.

If we turn to cases involving the renewal of bills or notes, we find that our Supreme Court has said that the word "renewal" is not a word of art and has no legal or technical signification: *Gault v. McGrath et al.*, 32 Pa. 392. This case involved the validity of a mortgage given to secure the payment of certain notes made for the accommodation of the mortgagor "and the renewals of the said notes, from time to time, until they should all be paid." The only question involved in the cause was whether certain outstanding notes, specified in the pleadings, were "renewals" of the original notes to secure which the mortgage was given. It was held that it was not necessary, in order to constitute notes subsequently issued renewals of such original notes, that they should have been issued for the same amounts or for the same periods, or that each successive note should have been applied to take up its immediate predecessor; but that a continuing loan of the name and credit of the mortgagee was within the terms and purpose of the mortgage. The court recognized that such wording might call for a strict construction under circumstances where a debtor was claiming the benefit of an agreement which would delay the payment of his debt; but should be given a construction in accordance with the real meaning and intention of the parties, where the obvious purpose of the mortgage was to secure a continuing loan of credit, no matter how it was evidenced. This case suggests, if anything, that we should look to the

real purpose of the parties in making the contract, rather than to any artificial definition of the term "renewals."

For the same reason, cases involving the interpretation of a lease as between landlord and tenant are not necessarily in point. If a tenant is given an option of renewal in a lease without qualification, then, of course, he is entitled to continue in possession for a term equivalent to that expressed in the original lease and upon the same conditions. Otherwise, the clause would have no real significance. See *Aaron v. Woodcock,* 283 Pa. 33, 128 A. 665. So, under the original lease here involved, the tenant would have been entitled to remain in possession for an additional five-year term at the stipulated rental. It does not necessarily follow, however, that the construction to be given with respect to the term in a lease as between the landlord and his tenant, should apply when, as here, the issue is between the landlord and his broker, under a contract for the latter's commissions. This must depend upon the intention of the parties and not upon any arbitrary standards of interpretation.

What then was the intention of the parties when they executed this particular agreement? Clearly, appellant was entitled to his commissions on all money collected during the first five years. Admittedly, he would have been entitled to commissions for two successive periods of equal length if the options had been exercised. Are we to conclude that, despite this agreement, he would, for example, have been entitled to no further commissions after the end of the original five years if the tenant then obligated himself for an additional period of five years at a lower rental, or for the same rental but for a shorter period? We cannot hold that the parties intended so to restrict the obligation.

It is true, as appellee points out, that the contract describes the lease as one for a period of five years, with

the option of renewal for two additional five-year periods. This statement, however, is contained in a separate sentence. It does not modify or limit the word "renewals" in the previous sentence. It is perfectly reasonable to assume that the parties, in thus describing the terms of the lease, were merely doing so in order to specify the maximum length of time for which commissions would be paid under any circumstances. Naturally, the renewals which they then had specifically in mind were those which the tenant had the option to demand. There is no necessary inference from this recital that appellant was not to get commissions on renewals for shorter terms or at lower rentals.

In fact, the agreement discloses that appellant was to receive the entire commission for the remainder of the fifteen-year term if appellee sold the property at any time during the term of the original lease or either of the two five-year renewals. Thus, had the property been sold prior to December 31, 1934, appellant would have been entitled to commissions for the remainder of a fifteen-year period upon the basis of the rent specified, even though it could not have been determined at that time whether the tenant intended to exercise either or both of its options. In view of this circumstance, it is difficult for us to conclude that it was intended that appellant should be deprived altogether of commissions, if and when any other arrangements, short of the actual termination of the relationship of landlord and tenant and the releasing of the tenant from all liability, were made.

But appellee says that the reason it was agreed to pay commissions to appellant was that the latter was instrumental in obtaining a tenant who might renew the original lease for a five-year term at $275 a month. It is suggested that because the tenant did not exercise this option, appellant has failed in the performance of the services for which he was to be paid commissions.

This is not the view we take of the services which appellant actually performed as broker. The tenant did not obligate itself to any renewals. Indeed it need not have taken any new lease at the end of the five-year term. The services which appellant rendered consisted primarily in bringing the parties together and effecting the execution of the original lease. When this was done, the services were complete and it was for this that commissions were to be paid. It is, therefore, incorrect to think of the situation as one in which appellant somehow has failed to give full consideration for the contract.

In our opinion, the true intention of the parties was that appellant was to receive commissions as long as the tenant continued to be an occupant of the building during the possible fifteen-year period and paid rental to appellee. As we have stated, his services were fully performed when the original lease was signed and the tenant was installed in the premises. Undoubtedly, it was the fact that the tenant was an actual occupant of the premises, and therefore more likely to continue its lease than to move to new quarters, which suggested to the parties that the broker was entitled to commissions upon renewals as well as upon the original lease. The mere fact of present occupancy suggests the possibility of negotiating for a longer term. It is true that the landlord is now receiving less than he would have received, had the tenant exercised the option, but there was no assurance by appellant or by the tenant that the latter would exercise the option; and while the landlord has agreed to a reduction in his income from the property, there has been a consentable and corresponding reduction in the commissions claimed by appellant.

For the reasons stated, it is our conclusion that, under the relationship of the parties here involved and the language of the contract between them, the word "renewal" may fairly and justly be held to cover the new lease made between appellee and his tenant. It

follows that the judgment in favor of the appellee must be reversed.

Judgment reversed and record remitted to the end that judgment may be entered upon the total verdict.