Charley **JOHNSON**, Plaintiff-Appellant, v. **WYATT LUMBER CO., Inc.**, Defendant-Appellee.

No. 5915.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 3, 1939.

Wood & Wood, of Leesville, for appellant.

J. S. Pickett, of Many, for appellee.

TALIAFERRO, Judge.

This appeal was consolidated for argument with case No. 5916, entitled Edward Griffith v. Wyatt Lumber Co., Inc., 193 So. 257, on the docket of this court decided today.

The issues tendered by the appeal and the questions submitted therein for decision are identical with those in said case No. 5916. And for the reasons assigned in the opinion rendered therein, this appeal is dismissed at plaintiff's cost. The case is remanded for further proceedings.

**ZUZAK v. QUERBES.**

No. 5924.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 3, 1939.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellant.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellee.

HAMITER, Judge.

Brokerage commissions in the amount of $720 are claimed in this proceeding by plaintiff, a duly licensed and bonded real estate agent, under a written contract which he had with defendant relative to the leasing of property belonging to the latter. The commissions are allegedly due by reason of a renewal of the original contract of lease that he negotiated.

Judgment was rendered in favor of plaintiff for the stated amount, and defendant appealed.

In the month of November, 1929, defendant was negotiating through plaintiff, who operated as F. J. Zuzak & Co., with a co-partnership known as D. Goldring, for the leasing of her premises described as No. 417 Milam Street in the City of Shreveport, Louisiana. In all matters pertaining to such property she was represented by her husband, Mr. Andrew Querbes.

During the course of the negotiations a written contract relating to the commissions to be paid plaintiff was executed. This brokerage agreement was in accordance with the regulations and requirements of the Shreveport Real Estate Board, and provided in part that,—

"The attorneys for Mr. Querbes are now preparing a formal contract of lease to be executed by Mrs. Querbes and by 'D. Goldring'. When this lease shall have been signed by both parties thereto, Mrs. Querbes is obligated to pay to F. J. Zuzak & Company Twelve Hundred and No/100 ($1200.00) Dollars as a commission for renting the building.

"The term of the lease shall be for ten (10) years and shall contain a provision under the terms of which the lessee may renew it for an additional five (5) years if it so chooses. In the event of such renewal and at the time the lessee gives notice thereof to Mrs. Querbes, she shall pay to F. J. Zuzak & Company an amount equal to one and one-half per cent. (1½%) of the rental that she will receive under the five year extension."

The contemplated lease contract was signed by the lessor and by the lessee, represented by its managing partner, Mr. E. Bernard Weiss, in the month of December, 1929, and contained, among others, the following provisions:

"The term of this lease shall be for a period of ten (10) years, beginning September 1st, 1930, unless renewed and extended in accordance with the provisions hereinafter set forth.

"The building shall be improved, remodeled and redecorated in accordance with plans to be prepared by Henry E. Schwarz which plans shall be approved by the lessor and the tenant. Upon the approval of the plans by the lessor and the tenant, the lessor shall proceed to have the work done in accordance with the plans; provided, however, that the total cost of such work shall not exceed the sum of Fifty-five Thousand ($55,000.00) Dollars, including the fee to be paid the architect.

\* \* \* \* \* \*

"In consideration of the obligations assumed by the lessor under this contract the tenant agrees to pay an annual rental of Six Thousand ($6000.00) Dollars, plus

ten per cent. (10%) of the total cost of the improvements to be made hereinabove set forth. In such total cost is included architect's fee and other fees and expenses necessarily incurred in making the required improvements to the building. * * *

"The lessor grants to the tenant the right to renew this lease for an additional five (5) years after the expiration thereof; provided, however, that the rental to be paid by the tenant during such five-year period shall be twenty per cent. (20%) greater than the rental for the present term of the lease."

On March 13, 1930, an amendment to the contract of lease was executed, which provided: "The total cost of the work of improving, remodeling and redecorating the building, including electrical fixtures, heating equipment and architect's fees, is changed to the sum of not more than Sixty Thousand ($60,000.00) Dollars, as provided in the original contract of lease."

It is to be noticed that under the lease contract as thus amended, the lessee obligated itself to pay the sum of $12,000 per year, this being "an annual rental of $6000.00, plus ten per cent of the total cost of the improvements."

The $1200 brokerage commissions specifically contracted to be paid to plaintiff on the signing of the lease contract were duly received by him. This amount equaled two per cent of the recited annual rental of $6000 for the duration of the lease's primary term of ten years. His agreement did not provide for commissions on the cost of the stipulated improvements.

After the building had been remodeled and improved as planned, the lessee took possession of it.

Further amendments to the lease contract were executed in the years 1933 and 1935. These provided for a reduction of the monthly payments to be made by lessee of from $1000 to $750. Also, under the latter amendment it was agreed that certain improvements made and to be made by lessee should become the property of the lessor upon the termination of the lease.

In October or November, 1936, a conference was had between Mr. Querbes and plaintiff, during which the former stated that Mr. Weiss, the representative of D. Goldring, desired to air-condition and otherwise improve the building and wanted a ten-year extension of the lease. Mr. Querbes recalled the existence of plaintiff's brokerage contract and further said that as such a low rental was being given for the property he was not disposed to pay any real estate commissions on the lease's renewal. Plaintiff replied that according to his contract he was entitled to commissions, regardless of the amount of the rentals. Subsequently, Mr. Querbes, Mr. Weiss and plaintiff met and the former reiterated his refusal to pay additional commissions, and stated that, "he was renting the space so cheap he thought it was up to the other fellow to pay it."

The partnership of D. Goldring, through its representative, Mr. Weiss, later agreed in writing with Mrs. Querbes, to protect her from plaintiff's claim for commissions on a renewal of the lease contract; and on the 8th day of January, 1937, the defendant, as lessor, and said partnership, as lessee, entered into another contract respecting the leasing of the premises. This instrument recited that the property was being leased for a period of 13 years and 8 months commencing January 1, 1937, and ending September 1, 1950, and that a rental of $800 per month would be paid. It was also agreed therein that certain improvements to the building would be made by and at the cost of lessee and would become the property of lessor upon the expiration of the term of the agreement. The concluding paragraph of the written contract reads as follows: "This agreement shall supersede and take the place of that certain contract of lease between this lessor and 'D. Goldring', dated the ——— day of November, 1929, for the remaining portion of the unexpired term thereof, and shall exist for the full term thereof as the sole agreement of the parties hereto affecting the premises described."

It will be seen from the foregoing that the original lease, which was for a primary term of ten years beginning September 1, 1930, had been in force and effect for a period of seven years and four months when the last discussed contract became effective on January 1, 1937.

Plaintiff claims in this suit one and one-half per cent of the $800 monthly rental stipulated in the lease contract of January, 1937, for a period of five years, or $720. It is his contention that this new

agreement was in effect a renewal of the original lease, and that by reason of such and under the provisions of his brokerage contract, he is entitled to that amount as commissions. Defendant insists that the original lease agreement was not renewed or extended, and, as the brief of her counsel states, that "additional commissions were to be paid only in the event the lessee exercised the option provided for in the original contract of lease in the manner and under the conditions contemplated by that contract."

In one of the briefs filed in this court we notice that the real issue presented by the case is correctly declared to be "whether or not the contract of lease entered into between Mrs. Querbes and D. Goldring on January 8, 1937, was the renewal of the contract of lease of November, 1929, as contemplated by the parties to the contract between Mrs. Querbes and F. J. Zuzak & Company, upon the execution of which contract additional commissions were due."

The record contains no evidence indicating that the execution of the last lease contract was a fraudulent or unfair attempt of the parties thereto to defeat plaintiff's commission claim under the renewal feature of his brokerage agreement. On the contrary, we are convinced that it was entered into in all good faith and for definite business reasons destined to provide benefits to those concerned.

■■ It is further observed that both of the above described lease contracts involved the same lessee, namely, D. Goldring, a co-partnership, notwithstanding the fact that a slight change in the membership of that entity occurred between the dates of execution of the first and last instruments. The following phraseology found in Brinson v. Monroe Automobile & Supply Co. et al., 180 La. 1064, 158 So. 558, 562, 96 A.L.R. 1206, sustains this observation: "A partnership, once formed and put into action, becomes, in contemplation of law, a moral being, distinct from the persons who compose it. It is a civil person which has peculiar rights and attributes. The partners are not the owners of the personal partnership property. It belongs to the ideal being, which has the control and administration thereof, to enable it to fulfill its legal duties and obligations. The partners own only the residuum."

No case in the Louisiana jurisprudence involving a factual situation similar to the one under consideration has been called to our attention and our search has disclosed none. Defense counsel cite the case of Page L'Hote Co. v. Munson S. S. Line, 169 La. 724, 125 So. 868, 869, as relating directly to the question presented and sustaining the contention that there was no renewal of the original lease within the contemplation of the brokerage contract; but it clearly appears to us that such decision has no relevancy here. The defendant in the cited case entered into a written contract of affreightment with the Otis Manufacturing Company under which the former agreed to transport approximately 45,000 tons of logs. The term of the agreement was to run from July 1, 1923 to January 31, 1924. The contract provided for "a commission of two and one-half per cent on the amount of this charter, renewals or duplications and demurrage," to be paid by the defendant to plaintiff. The stipulated commission was paid during the life of the agreement. Three additional contracts were entered into by defendant with said Otis Manufacturing Company covering separate periods subsequent to that above stated, in which there were no provisions relating to the payment of brokerage commissions. The suit was for the purpose of recovering commissions under the three subsequently enduring contracts, the plaintiff claiming that the words "renewals" and "duplications" of the first agreement included any and all future contracts of affreightment between the parties thereto. The Supreme Court did not adopt the interpretation urged by plaintiff. It held that the words "renewal" and "duplications" meant that plaintiff was entitled only to commissions on any excess requirements above the tonnage stipulated to be carried within the period provided for by the first contract. The language employed regarding this was:

"The contract was a special contract to be executed during a fixed period of time, and any freight charges earned during that time under that contract were subject to the brokers' commission.

"The provision of the contract we have quoted expressly limits the commission to that contract or charter and to renewals or duplications of that contract, made, of course, during the period fixed in that contract. Any construction which would extend the terms used to any future contract

made by the parties after the expiration of the term fixed by that contract would be unreasonable, and manifestly not within the contemplation of the parties."

The brokerage agreement in the instant case clearly provides for the payment of commissions in the event the original lease is extended beyond its primary term of ten years.

Our attention is directed to cases from appellate courts of other states involving facts substantially identical with those herein. Of course, the decisions in those cases are not controlling of the actions of the tribunals of Louisiana. They have only a persuasive effect. Plaintiff cites the cases of Rosenblum v. Lurie, 128 Pa.Super. 480, 194 A. 204, from the Superior Court of Pennsylvania, and Odell v. Wessinger, 54 Ga.App. 838, 189 S.E. 367, decided by the Court of Appeals of Georgia. Clearly in conflict with the holdings in those cases are the decisions in Allwin Realty Co. v. Barth, 161 App.Div. 568, 146 N.Y.S. 960, from the Supreme Court of New York, and Mitchnik v. Brennan, 159 Misc. 287, 286 N.Y.S. 609, decided by the Municipal Court of the City of New York, Borough of Queens, both of which are relied on by defendant.

The views expressed in the Rosenblum litigation so nearly accord with ours regarding the facts in the instant controversy that we shall take the liberty of discussing the case and quoting from the opinion therein. The plaintiff, A. M. Rosenblum, a licensed real estate broker, procured a tenant, Harry Livingston, Inc., for the first floor of the premises owned by defendant Lurie. The lease contract negotiated was for an original term of five years beginning April 1, 1930, at a rental of $250 per month. According to the contract's provisions, the lessee had the option of renewing it for a further term of five years from April 1, 1935, at a monthly rental of $275, and also the option of renewing it for an additional term of five years from April 1, 1940, at a monthly rental of $300. Contemporaneously with the signing of the contract of lease the defendant lessor agreed in writing as follows [128 Pa.Super. 480, 194 A. 205]: "This memorandum is executed for the purpose of acknowledging to A. M. Rosenblum that the said A. M. Rosenblum was solely instrumental in securing Harry Livingston, Incorporated, a Delaware corporation, as a tenant for the storerooms located at Nos. 69–71 West State Street, owned by me. I hereby agree to pay the said A. M. Rosenblum five (5%) per cent of the total rentals received by me from the said Harry Livingston, Incorporated, payable monthly during the entire life of the lease entered into between them and me, the said George Lurie, and any renewals thereof. The said lease is for a period of five years beginning April 1, 1930, and giving the lessee the option of renewing said lease for two additional five year periods."

The lessee took possession of the leased space in April, 1930, and thereafter continued to occupy it. From time to time the rent specified in the original contract was reduced. As stated by the court, "the tenant did not exercise its option of renewal under the lease, but instead secured, on October 24, 1934, a new lease from the landlord for a period of one year from April 1, 1935, at a monthly rental of $150." This yearly lease was thereafter renewed from year to year.

Plaintiff, the broker, demanded payment of commissions, by reason of his contract, under the new lease. This was refused, and the litigation to recover therefor followed. The broker claimed that "it was the intention of the parties that he was to receive commissions on any rentals actually received from the same tenant, as long as the latter continued in possession, no matter what changes in rentals or terms might be agreed upon by appellee and his lessee for the latter's continued occupancy of the premises." The position taken by the lessor was that "the word 'renewal,' as used in the contract, means only a new five-year lease, containing the same conditions as the original lease and at the stipulated increased rental; hence, a one-year lease at a reduced rental is not a renewal, and does not entitle appellant to commissions."

The trial court rejected the broker's demands. On appeal, it was held that he was entitled to the claimed commissions. In reversing the judgment, the appellate court said in part:

"What then was the intention of the parties when they executed this particular agreement? Clearly, appellant was entitled to his commissions on all money collected during the first five years. Admittedly, he would have been entitled to commissions for two successive periods of equal length if the options had been exercised. Are we to conclude that, despite this agreement, he would, for example, have been entitled to no further commissions after the end of the

original five years if the tenant then obligated himself for an additional period of five years at a lower rental, or for the same rental but for a shorter period? We cannot hold that the parties intended so to restrict the obligation.

* * * * * *

"In our opinion, the true intention of the parties was that appellant was to receive commissions as long as the tenant continued to be an occupant of the building during the possible fifteen-year period and paid rental to appellee. As we have stated, his services were fully performed when the original lease was signed and the tenant was installed in the premises. Undoubtedly, it was the fact that the tenant was an actual occupant of the premises, and therefore more likely to continue its lease than to move to new quarters, which suggested to the parties that the broker was entitled to commissions upon renewals as well as upon the original lease. The mere fact of present occupancy suggests the possibility of negotiating for a longer term. It is true that the landlord is now receiving less than he would have received, had the tenant exercised the option, but there was no assurance by appellant or by the tenant that the latter would exercise the option; and, while the landlord has agreed to a reduction in his income from the property, there has been a consentable and corresponding reduction in the commissions claimed by appellant.

"For the reasons stated, it is our conclusion that, under the relationship of the parties here involved and the language of the contract between them, the word 'renewal' may fairly and justly be held to cover the new lease made between appellee and his tenant."

Defense counsel seek to distinguish the Rosenblum decision from the case at bar. They urge that therein the broker's contract provided for payment of commissions upon any renewals of the original lease; while here the agreement specifically referred to the contract of lease to be executed, its terms and provisions, and the option of renewal for an additional five-year period, and provided that the additional commissions were to be paid only in the event of the exercise of the option granted in the original lease according to the provisions of that contract and the occupancy continued accordingly.

The existence of the claimed distinction between the two cases does not satisfactorily appear. Neither are we convinced that the parties to the brokerage contract under consideration intended the construction of its terms and provisions that defendant now urges. The intention was, we think, that the broker should receive commissions on rentals paid during such time as the tenant continued to be an occupant of the premises, not, however, exceeding the stipulated five-year renewal period. Any other interpretation of contractual provisions of that kind might lead to the perpetration of gross injustices, notwithstanding the good faith of the lessor and lessee involved. Let us assume that the partnership of D. Goldring had occupied the premises under the lease contract in question until shortly before the expiration of the primary term of ten years; that it then informed Mrs. Querbes of its intention of retiring from business on a date four years and eleven months following said expiration, and desired to continue to occupy the premises until that date; that such parties, instead of giving recognition to "a renewal" of the lease for the stipulated five-year period, entered into a separate agreement providing for the continued occupancy during the suggested period of four years and eleven months. Assuming further that the transaction was bona fide in all respects, can it be said that plaintiff's claim for commissions during the last stated rental period was defeated by reason of the fact that the new agreement between the landlord and tenant provided for a lease one month shorter in duration than the one mentioned in the renewal option? We think not.

In our opinion, the trial judge has correctly interpreted the brokerage contract which forms the basis of this litigation, and has properly allowed the commissions claimed by plaintiff.

Accordingly, the judgment is affirmed.