**BURGER et al. v. WESTERN SAND & GRAVEL CO. et al.**

**No. 6106.**

Court of Civil Appeals of Texas. Amarillo.

Oct. 16, 1950.

Rehearing Denied Nov. 10, 1950.

Morgan, Culton, Morgan, Britain & White, Amarillo, for appellants.

Gibson, Ochsner, Little, Harlan & Kinney, and Simpson, Clayton & Fullingim, all of Amarillo, for appellees.

STOKES, Justice.

On September 12, 1939, J. L. Bivins executed a lease to S. F. Sullenberger in which 3556 acres of land located in Oldham County were leased for the purpose of producing and removing rock, sand and gravel. The lease provided for a royalty to be paid to the lessor of 10¢ per cubic yard for commercial materials removed and 5¢ per cubic yard for railroad ballast re-

moved from the land. Appellee, Western Sand and Gravel Company, is a domestic corporation, organized by S. F. Sullenberger a few years prior to the date of the lease, with a capital stock of 40,000 shares of the par value of $1 each. On September 14, 1939, S. F. Sullenberger subleased or assigned the Bivins lease to the appellee, Western Sand and Gravel Company, and, in addition to the royalty provided in the lease to be paid to the lessor, he retained an over-riding royalty of 5¢ per ton on all of the rock, sand and gravel removed from the leased premises and sold for 50¢ or more per ton, and 2¢ per ton for all of such material removed and sold for 40¢ to 49¢ per ton. The lease was for a term of four years from January 1, 1940, and it provided that the lessee should have the privilege of renewing it for another term of four years upon the same terms and conditions as contained in the original lease. The assignment provided that " * * * the over-riding royalty is to also apply to, and be paid by said Western Sand and Gravel Company to said S. F. Sullenberger on any and all renewals of the above mentioned lease."

On October 11, 1939, S. F. Sullenberger executed his last will and testament in which he bequeathed to his son, S. M. Sullenberger, all certificates of capital stock owned by him in the Western Sand and Gravel Company, and to his daughter, the appellant Mrs. W. D. Burger, the over-riding royalty that had been retained by him in his assignment of the original lease to Western Sand and Gravel Company together with his home in Amarillo and his life insurance. Mrs. Burger and S. M. Sullenberger were the only children of S. F. Sullenberger and he appointed them as joint independent executrix and executor of his will.

On the same day, October 11, 1939, S. F. Sullenberger, his son, the appellee S. M. Sullenberger, and his daughter, the appellant Mrs. W. D. Burger, the latter two joined by their respective spouses, entered into a written contract or agreement in which they undertook to specify in a clearer and more practical manner the division that was intended to be made of the prop-

erty of S. F. Sullenberger and expressing more clearly the intentions of the testator and their understanding of the provisions of his will, which he had just executed and which was before them at the time. The contract specified that a copy of the will together with a copy of the assignment of the lease to Western Sand and Gravel Company were attached to it and the contract contains the following provision:

"In the will of said S. F. Sullenberger he gives and bequeaths to his son Samuel M. Sullenberger, any and all stock or interest owned by him in the Western Sand and Gravel Co. a corporation, however it is expressly agreed and understood by all parties hereto, that the said Samuel M. Sullenberger shall have the right and privilege of selling his interest in the Western Sand and Gravel Co. at any time he may desire to do so and the over-riding royalty heretofore provided for to be paid the said· S. F. Sullenberger, shall cease and terminate upon the date of such sale, and in lieu of the over-riding royalty bequeathed to Mrs. W. D. Burger in the will of S. F. Sullenberger, the said Mrs. W. D. Burger is to receive one-half of the sale price if valued at Forty Thousand Dollars or less, but if the sale price is more than Forty Thousand Dollars, then and in that event a total payment to Mrs. W. D. Burger, of Twenty Thousand Dollars will be considered a full payment and liquidation of the over-riding royalty mentioned and bequeathed in said will of S. F. Sullenberger, and the said Mrs. W. D. Burger agrees to execute a release to the royalty mentioned as an over-riding royalty to be paid to S. F. Sullenberger in the lease from him to the Western Sand and Gravel Co., as well as any other leases which might provide for an over-riding royalty to be paid to him.

"In the said will of S. F. Sullenberger he gives and bequeaths to his daughter Mrs. W. D. Burger his homestead located on lots or part of Lots 1, 2, 7, and 8, Block 120, Oliver Eakle Addition to the City of Amarillo, Texas, and the over-riding royalty retained by him in the above mentioned lease to the Western Sand and Gravel Co.

and renewals thereof, and any and all life insurance carried by him."

S. F. Sullenberger died on July 6, 1942, and his last will and testament was duly probated upon the application of Mrs. Burger, appellee S. M. Sullenberger not joining therein on account of illness. The option to extend the lease for a second term of four years was exercised and, the original lessor, J. L. Bivins, having died, the Western Sand and Gravel Company on May 15, 1947, before the second term expired, solicited of the representatives of his estate another renewal or extension under the same terms as provided in the original lease. In reply to its letter of solicitation, the representatives of the Bivins estate expressed themselves as not feeling justified in renewing or extending the lease but expressed their willingness to receive a proposal for a new lease which would provide for substantially greater royalties than those provided by the original lease. Negotiations proceeded until January 1, 1948, when the representatives of the Bivins estate executed to Western Sand and Gravel Company a new lease covering the same land as that included in the original lease and 1280 acres additional, aggregating 4836 acres, and providing for royalties of 12½¢ per cubic yard for sand, gravel and crushed rock and 6¢ per cubic yard for all railroad ballast taken from the land included in the new lease. On January 10, 1948, Western Sand and Gravel Company remitted to appellant, Mrs. Burger, $1207.53, being the amount due her as over-riding royalty for the month of December 1947. In its letter of remittance, it informed Mrs. Burger that it had been unable to procure an extension or renewal of the original lease and that the enclosed cheque would be the last remittance to her of the over-riding royalty payments.

Mrs. Burger, joined by her husband, filed this suit against the appellees, Western Sand and Gravel Company and S. M. Sullenberger, on December 30, 1948. She set up the essential facts above detailed and alleged that, at the time the contract of October 11, 1939 was executed, it was agreed between her, her father S. F. Sul-

lenberger and her brother, the appellee S. M. Sullenberger, that the over-riding royalty was to be paid to her by the Western Sand and Gravel Company as long as sand and gravel were taken by it from the Bivins Ranch in Potter and Oldham Counties, and that such royalty was to be paid by the sand and gravel company under the lease which then existed or any renewals thereof. She further alleged that it was agreed between them that the term " 'any renewals' should be construed to mean so long as the defendant, Western Sand and Gravel Company, took sand and gravel under any lease covering the said Bivins Ranch in Potter and Oldham Counties, and that * * * said will and contract were so construed by all parties, plaintiffs and defendants, at said time." She further alleged that it was the intention of all of the parties to the contract and the will that, upon the death of her father, S. F. Sullenberger, the over-riding royalties provided in the assignment from S. F. Sullenberger to the sand and gravel company were to pass to and become vested in her under the will and were to be paid to her by the sand and gravel company as long as it produced such materials from the Bivins Ranch. She further alleged that, in order substantially to equalize the bequests to her and her brother, the over-riding royalty was bequeathed to her by her father in lieu of 20,000 shares of the capital stock of the sand and gravel company or any dividends paid thereon and that the entire capital stock was bequeathed to her brother, S. M. Sullenberger, in order that he might be enabled to manage and control the affairs of the company in a better and more efficient manner. She prayed for an accounting and judgment for all over-riding royalties claimed by her that had accrued since December 31, 1947.

The appellees answered by allegations controverting those contained in the pleadings of appellants and the case was submitted to the court without the intervention of a jury. Judgment was rendered on April 21, 1950, denying appellants any recovery and they duly excepted and have perfected an appeal to this court.

Appellants present the case upon a large number of assignments or points of error but we do not consider it necessary to discuss them in detail. The controlling questions presented by the briefs are, first, did the court below err in holding that the new lease, executed by the representatives of the Bivins estate, was not a renewal nor an extension of the original lease; and secondly, that appellant, Mrs. Burger was not entitled to recover any royalty under the new lease.

The case turns upon the question of whether or not the new lease, executed by the representatives of the Bivins estate to Western Sand and Gravel Company, should be considered as a renewal of the original lease executed on September 12, 1939, by J. L. Bivins to S. F. Sullenberger. Appellees contend that the new lease was not such a renewal because it was dissimilar to the old lease in a number of respects, namely, that it was executed by and between different parties; that it covered different property; that it was for a different term; and that the royalty provided by it was different from the royalty provided in the original lease. The original lease provided for only one renewal of four years. The first term of four years expired on December 31, 1943, and the renewal term expired December 31, 1947. The assignment executed by S. F. Sullenberger to the sand and gravel company provided that the over-riding royalty should be paid by the sand and gravel company to S. F. Sullenberger on any and all "renewals" of the original lease and the contract between the members of the Sullenberger family of October 11, 1939, provided that, under the will of S. F. Sullenberger, Mrs. Burger should have, at his death, the over-riding royalty retained by him in the original lease and "renewals" thereof. Appellee, S. M. Sullenberger, testified that, in the conversation which resulted in the contract of October 11, 1939, it was understood by all parties that the contract and the will of S. F. Sullenberger should be construed to mean that the over-riding royalty would be paid to Mrs. Burger as long as sand and gravel

were taken or produced from the Bivins properties. W. D. Burger and his wife confirmed this testimony.

■ ■ If the term "renewals" has a fixed and definite meaning and refers only to the option given in the original lease to renew it for only one term of four years, appellee's contention is correct and the court below was correct in its holding. It seems obvious to us, however, that the term should not be so restricted. The Sullenberger family owned and controlled the entire capital stock of the sand and gravel company and we think it is reasonable to conclude that, in making the agreement of October 11, 1939, they had the right to designate its future acts and conduct. By the use of the term "renewals" in the assignment of S. F. Sullenberger to the sand and gravel company and the use of the same term in the adjustment agreement of October 11, 1939, it is evident that all the parties contemplated some kind of continuation of the right of the sand and gravel company to take rock, sand and gravel from the properties of the Bivins estate because the original lease, which was then in force, provided for only one renewal. This creates serious doubt and uncertainty as to the meaning of the term "renewals" in those instruments and makes it proper and necessary to ascertain and consider the construction that was placed upon those terms by the parties themselves. It has long been settled that evidence of the practical construction given to an instrument by the parties to it is admissible to explain its meaning when an explanation becomes necessary. Linney v. Wood, 66 Tex. 22, 17 S.W. 244; Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504, and authorities there cited. It was uncontroverted that, in discussing the meaning of S. F. Sullenberger's will and the agreement of October 11, 1939, all of the parties agreed that those instruments were intended to mean that the over-riding royalty would be paid by the sand and gravel company as long as it was legally permitted to take and produce rock, sand and gravel from the Bivins' properties. We conclude, therefore, that the court erred in holding that appellant, Mrs. W. D.

Burger, was not entitled to recover under the new lease the royalties that were provided by the assignment of S. F. Sullenberger to the Western Sand and Gravel Company.

■ It is true that the new lease was not a duplicate of the old one. It was between different parties. The representatives of the Bivins estate, instead of J. L. Bivins, were the lessors and the Western Sand and Gravel Company, instead of S. F. Sullenberger, was the lessee. The land included in the new lease was more extensive than that included in the old lease by 1280 acres; and the royalty to be paid by the lessee to the lessor was slightly greater than that which was provided by the old lease. These different provisions became features of the new lease, not because the owners of the land were not willing for the operations of the sand and gravel company to continue, but because they were not satisfied with the royalties provided by the old lease. The same operations were pursued under the new lease and the mere fact that 1280 acres additional land was included in it; that it was executed by the representatives of the Bivins estate; that the owner by assignment was the lessee instead of the original lessee; and that it provided for an increased royalty to be paid to the lessor would not make it so antagonistic to the old lease that the parties could not consider it as a renewal. The rule is well-settled that, when a contract has been changed by mutual consent, it becomes a new agreement and takes the place of the old and the new agreement then consists of the new terms and as much of the old as the parties have agreed shall remain unchanged, but we know of no reason why the parties to it should not be permitted to treat it and consider it a renewal of the original contract. In our opinion this rule of law applies to this case. Maddox Motor Co. v. Ford Motor Co., Tex.Com.App., 23 S.W.2d 333; Rosenblum v. Lurie, 128 Pa.Super. 480, 194 A. 204.

■ Inasmuch as appellee, Western Sand and Gravel Company is a corporation and was not, as such, a party to the agree-

**730**

ment of October 11, 1939, the question could arise as to whether it was bound by the agreement. The sand and gravel company does not make a serious contention to that effect but the record shows that, when the agreement was made, S. F. Sullenberger owned practically all of the capital stock of the sand and gravel company and that he controlled that which did not stand in his name. In fact, the Sullenberger family owned and controlled the corporation at all times after it was organized. All of its capital stock was therefore represented in the negotiations and the law is well-settled that, where all of the stockholders of a corporation enter into a contract with another party, it is binding upon the corporation even though no action is taken by its board of directors, when the corporation owes no debts and the rights of creditors are not affected. The record ·shows conclusively that the corporation did not owe any debts and therefore the rights of creditors were not involved in this transaction. Aransas Pass Harbor Co. v. Manning, 94 Tex. 558, 63 S.W. 627; Zorn v. Brooks, 125 Tex. 614, 83 S.W.2d 949; Norris v. Cox, Tex.Civ. App., 131 S.W.2d 1028.

As indicated by what we have said, in our opinion the court below erred in holding that the new lease, executed by the representatives of the Bivins estate to Western Sand and Gravel Company, was not a renewal of the original lease and that the appellant, Mrs. Burger, was not entitled to recover any royalty under the new lease. The case was fully developed upon the trial except that no accounting was had because judgment was rendered against the plaintiffs and, if that had been the proper judgment, none would have been required.

The judgment of the court below will be reversed and the cause remanded with instructions that an accounting be decreed and that judgment be rendered in favor of the appellant, Mrs. W. D. Burger, against the appellee, Western Sand and Gravel Company, for such an amount as might be found by the court to constitute the over-riding royalties due her from December 31, 1947 to the date of the judgment.